[No. 27997-1-I.   Division One.   August 17, 1992.]

*In the Matter of the Personal Restraint of*
MICKEY DAVIS, *Petitioner.*

*Constance Marie Krontz* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Timothy Bradshaw, Deputy; Kenneth O. Eikenberry, Attorney General,* and *John M. Jones, Assistant,* for respondent.

PER CURIAM. — Petitioner Mickey Davis filed a personal restraint petition seeking a decision prohibiting the Department of Corrections (DOC) from imposing community placement as a condition of his sentence until the judgment and sentence is amended to include community placement. Alternatively, he seeks specific performance of his plea agreement on the ground that he was never informed of the community placement requirement prior to entry of his plea. We grant the petition on the ground that DOC cannot impose community placement absent entry by the trial court of an amended judgment and sentence.

## FACTS

On July 12, 1988, petitioner Mickey Davis was arrested for possession of stolen property and possession of cocaine. On June 22, 1989, he entered a plea of guilty to the charge of possession of cocaine. His statement on plea of guilty said nothing about community placement. The prosecutor states in his response to the petition "that community placement was not contemplated by any party" and that "nothing in the record indicates the defense informed anyone of the community placement requirement." The prosecutor also states that the guilty plea was entered in exchange for dismissal of the possession of stolen property charge and the prosecutor's recommendation of a particular sentence on the possession of cocaine charge. The statement on plea of guilty stated that the prosecutor would recommend, among other things, a sentence of 43 months. The standard range for the offense was 43 to 57 months.

On June 23, 1989, following acceptance of the plea, the trial court entered judgment and imposed a sentence of 43 months. Nothing in the judgment and sentence indicates that community placement was to be imposed as part of petitioner's sentence. The court did not check the box indicating that the "defendant shall report to an assigned community corrections officer upon release from confinement for monitoring of the remaining terms of this sentence." Nor did the court check the box indicating that an appendix for community placement was attached to the judgment and sentence. The minute entry form from the sentencing hearing contains a number of sentencing options to be marked if imposed by the court. The community supervision/community placement option is not marked.

By letter dated September 8, 1989, the prosecutor informed petitioner's counsel that the judgment and sentence was incomplete because it failed to include community placement as required by statute. The prosecutor requested that defense counsel sign and return an order correcting petitioner's judgment and sentence. The prosecutor stated that if he did not hear from petitioner's counsel within 2 weeks, he would ask the sentencing court to schedule a hearing.

By letter dated December 6, 1989, petitioner's counsel returned the prosecutor's proposed order without signature. Defense counsel explained that she was "unwilling to sign an order amending my appellate client's sentence." She suggested that the prosecutor arrange for petitioner to have trial counsel reappointed for purposes of amending the judgment and sentence. The judgment and sentence was never amended.

On March 15, 1991, petitioner filed the instant petition seeking a decision prohibiting DOC from subjecting him to community placement until his judgment and sentence is amended to include that condition. Petitioner's appointed counsel argued in the alternative that community placement should be stricken from petitioner's sentence because

it is a direct consequence of his plea, and he was never informed of that consequence prior to entry of his plea.

On November 18, 1991, petitioner was released from confinement and transferred to community placement. He absconded from community placement several weeks later and was arrested on an escape warrant on May 13, 1992. Petitioner was placed in work release but was subsequently arrested for a violation of the Uniform Controlled Substances Act. He is currently incarcerated in the Whatcom County Jail on the pending controlled substance charge. The Attorney General states that "pursuant to the provisions of RCW 9.94A.170, petitioner's community placement is being tolled until such time as he is released from total confinement."[1]

DECISION

Under RCW 9.94A.120(8)(a),[2] any person convicted of a felony under RCW 69.50 on or after July 1, 1988, must be sentenced to a 1-year term of community placement beginning either upon completion of the term of confinement or at such time as the offender is transferred to community cus-

---

[1] Although petitioner is technically not unlawfully restrained at this time, the Attorney General's response indicates that DOC will reimpose the community placement condition upon petitioner's release on the pending drug charge.

[2] "When a court sentences a person to a term of total confinement to the custody of the department of corrections for . . . any felony offense under chapter 69.50 or 69.52 RCW, committed on or after July 1, 1988, *the court shall* in addition to the other terms of the sentence, *sentence the offender to a one-year term of community placement beginning either upon completion of the term of confinement or at such time as the offender is transferred to community custody in lieu of earned early release* in accordance with RCW 9.94A.150 (1) and (2). When the court sentences an offender under this subsection to the statutory maximum period of confinement then the community placement portion of the sentence shall consist entirely of such community custody to which the offender may become eligible, in accordance with RCW 9.94A.150 (1) and (2). Any period of community custody actually served shall be credited against the community placement portion of the sentence." (Italics ours.) RCW 9:94A.120(8)(a).

" 'Community placement' means a one-year period during which the offender is subject to the conditions of community custody and/or postrelease supervision, which begins either upon completion of the term of confinement (postrelease supervision) or at such time as the offender is transferred to community custody in lieu of earned early release. Community placement may consist of entirely

tody in lieu of earned early release pursuant to RCW 9.94A-.150. The pertinent language in the latter statute became effective July 1, 1988. Since petitioner's judgment and sentence states that his crime was committed on July 12, 1988, a 1-year term of community placement was statutorily required. However, because petitioner's judgment and sentence says nothing about community placement, the issue is whether that statutory requirement must be made a part of the judgment and sentence before it can be imposed against him. Petitioner contends DOC has no authority to impose community placement because it was not made a condition of his sentence and only the sentencing court has the authority to amend his judgment and sentence. The prosecutor and the Attorney General both take the position that the community placement statute is "self-executing" and enforceable by DOC. The relevant case law supports petitioner's position.

In *State v. Luke*, 42 Wn.2d 260, 254 P.2d 718, *cert. denied*, 345 U.S. 1000, 97 L. Ed. 1406, 73 S. Ct. 1146 (1953), the trial court sentenced Luke to concurrent sentences for several convictions under separate cause numbers. In establishing Luke's minimum term for the convictions, the Board of Prison Terms and Paroles imposed consecutive minimum terms for the two cause numbers as required by statute. On appeal from the denial of his petition to enforce the trial court's order, the Supreme Court held that the Superior Court had exceeded its statutory authority in imposing concurrent rather than consecutive sentences. In so holding, the court stated that the statute violated by the Superior Court "is mandatory and became a part of the judgments the same as if the court had complied with it." *Luke,* at 263. Responding

---

community custody, entirely postrelease supervision, or a combination of the two." Former RCW 9.94A.030(4).

" 'Community custody' means that portion of an inmate's sentence of confinement in lieu of earned early release time served in the community subject to controls placed on the inmate's movement and activities by the department of corrections." Former RCW 9.94A.030(3).

" 'Postrelease supervision' is that portion of an offender's community placement that is not community custody." Former RCW 9.94A.030(21).

to Luke's argument that the Board had to obey the judgment until it was corrected by the court, the court stated:

> While this proposition may be sound, it is of no avail to this defendant. Not only is the order of the board now correct, as we construe the judgments, but we agree with the trial court in its conclusion that it had no jurisdiction over the board on this petition by defendant.

*Luke*, at 263. The *Luke* court apparently agreed with Luke that the Board generally must obey judgments as written, but concluded that judgments must be construed to include any mandatory statutory requirement. Consequently, the Board's order was not contrary to the judgment as construed by the *Luke* court.

Subsequently, in *Brooks v. Rhay*, 92 Wn.2d 876, 602 P.2d 356 (1979), the court departed from the holding in *Luke* when it ordered resentencing of an inmate whose judgment unlawfully imposed concurrent sentences. The *Brooks* court held that the Board could not correct the erroneous sentence and that the trial court had to resentence the inmate because "[h]ad the trial court been aware that it could not legally sentence the petitioner to prison except under a consecutive sentence, the trial court's leniency could well have been expressed in a suspended or deferred sentence." *Brooks*, at 877. The court noted that the Board's imposition of consecutive sentences was contrary to the trial court's clear intent to be lenient.[3] Thus, it appears that *Brooks* overruled *Luke sub silentio. See In re McCoy*, 25 Wn. App. 600, 608 P.2d 1259 (1980) (concluding that *Brooks* overruled *Luke sub silentio*).

The Supreme Court moved even further away from *Luke* in *In re Phelan*, 97 Wn.2d 590, 647 P.2d 1026 (1982). There, the Board set a maximum expiration date for the inmate which effectively denied credit for time served that had been granted by the trial court. The Supreme Court stated that "[t]he Board . . . improperly took it upon itself to

---

[3]*See also In re Habbitt*, 96 Wn.2d 500, 636 P.2d 1098 (1981) (where erroneous portion of sentence restricted the trial court's discretion, matter had to be remanded so that trial court's discretion could be exercised unfettered).

rewrite the trial court's sentencing order. . . . Although granting credit for time served is not an expression of leniency . . . the proper procedure was still to return petitioner for resentencing before the trial court." (Citations omitted.) *In re Phelan*, at 596-97. Thus, *Phelan* stands for the proposition that an erroneous sentence can only be corrected by the trial court, regardless of whether the trial court intended a lenient sentence.

Finally, in *In re Chapman*, 105 Wn.2d 211, 713 P.2d 106 (1986), the petitioners had received concurrent sentences from the trial court, but the Board ordered that the minimum terms run consecutively. The Supreme Court held that the Board erred in setting consecutive minimum terms and stated:

> We are distressed at the Parole Board's action in these cases because regardless of the Parole Board's view of the law regarding concurrent/consecutive sentencing, the Parole Board was confronted with a valid superior court order requiring concurrent sentences. If the Parole Board believed these sentences legally incorrect, the proper remedy was for the Parole Board to return defendants to superior court for resentencing. *Brooks v. Rhay*, 92 Wn.2d 876, 602 P.2d 356 (1979); *In re Phelan*, 97 Wn.2d 590, 596, 647 P.2d 1026 (1982). The Parole Board's attempts "to correct" improper sentences usurped the judicial role of the first sentencing judge and in this instance, almost erroneously required defendants to serve longer prison terms than were ordered by courts of law.

*In re Chapman*, at 216. Thus, *Chapman* emphasizes that the Board exceeds its authority and infringes on the authority of the superior court when it attempts to correct an allegedly erroneous sentence.

 In sum, while *Luke* has never been expressly overruled, the Supreme Court's subsequent decisions overrule it *sub silentio*, and the court's most recent decisions indicate that the Board and DOC lack authority to correct an erroneous sentence.[4] *See also In re Pepperling*, 65 Wn. App. 17, 827

---

[4]It could be argued that the post-*Luke* cases are distinguishable on the ground that they involved situations where the trial court would have some amount of discretion on resentencing and would not be restricted to simply implementing the statutory requirement. However, while respect for the trial court's discretionary

P.2d 347 (1992); *Hunton v. Kincheloe*, 54 Wn. App. 643, 774 P.2d 1271 (1989) (the Board has no authority to change a maximum term set by the trial court even if the Board believes the maximum sentence is erroneous).

The Legislature recently created a new statutory procedure for DOC to challenge and correct erroneous sentences in court. RCW 9.94A.210(7). That statute provides:

> The department may petition for a review of a sentence committing an offender to the custody or jurisdiction of the department. The review shall be limited to errors of law. Such petition shall be filed with the court of appeals no later than ninety days after the department has actual knowledge of terms of the sentence. The petition shall include a certification by the department that all reasonable efforts to resolve the dispute at the superior court level have been exhausted.

In *In re Chatman*, 59 Wn. App. 258, 264, 796 P.2d 755 (1990), this court examined the legislative history of the statute and stated:

> Moreover, one of the purposes clearly underlying enactment of RCW 9.94A.210(7) was to provide an efficient and formal procedure for the Department to challenge an erroneous sentence where such a procedure did not exist before. As noted in the Final Bill Report for HB 1342:
>
>> After a judge sentences a defendant, either the state or the defendant may appeal the sentence if either party believes the court exceeded its authority to impose certain provisions of the sentence. However, if neither the state nor the defendant appeals the judgment and sentence, the Department of Corrections may still believe that the judgment is erroneous. The department is then in the position

---

authority was the primary ground for resentencing advanced in the early post-*Luke* cases, the decisions in *Phelan* and *Chapman* indicate that *the court* must correct an erroneous sentence even if the court will have no discretion to alter the sentence when it corrects the error and will simply perform a mandatory act. The Supreme Court's decision in *State v. Pringle*, 83 Wn.2d 188, 517 P.2d 192 (1973), also supports this conclusion. In *Pringle*, the State filed a writ of mandamus in the Supreme Court requesting the court to compel the sentencing judge to enter a deadly weapon finding or to have the Supreme Court itself enter an order making such a finding. The *Pringle* court held that the sentencing court was required to enter the deadly weapon finding given the plea and a controlling statute, and that the sentence was invalid. The court recognized that the sentencing judge had "no discretion but to enter the special finding . . . required by statute" and held that mandamus was the proper remedy "to require the court to perform a mandatory act . . .." *Pringle*, at 195.

of disregarding the judgment or enforcing what the department believes to be an erroneous sentence. *The appellate courts have admonished the department for disregarding sentences and have repeatedly advised the department that the appropriate procedure is to return the defendant to the trial court for resentencing.* However, no formal procedure exists to return the defendant to the trial court for resentencing. Additionally, if the trial court declines to resentence the defendant, no formal procedure exists so that the department can challenge the court's sentence in the appellate courts.

(Italics ours.) Thus, in creating the postsentence petition procedure in RCW 9.94A.210(7), the Legislature clearly recognized that DOC has no authority to correct erroneous sentences on its own. The statute evidences a legislative intent to require DOC to seek correction of sentences in the trial court or this court and provides a procedure for it to do so.

█ Furthermore, the Legislature has expressly required the *trial court* to impose community placement in its sentence. RCW 9.94A.120(8)(a) states that "*the court* shall in addition to the other terms of the sentence, *sentence* the offender to a one-year term of community placement . . .." (Italics ours.) Community placement must be imposed by the court, not DOC.[5] Under these circumstances we cannot conclude that the requirement for community placement is "self-executing".

We conclude that the relevant case law, the postsentence petition statute, and RCW 9.94A.120(8)(a) together require the trial court to amend the judgment and sentence before DOC can impose community placement on petitioner. Consequently, it is unnecessary for us to reach the issue of the voluntariness of petitioner's guilty plea since that issue is

---

[5]We disagree with DOC's suggestion that RCW 9.94A.150(2) grants it authority to impose community custody/placement regardless of whether the sentencing court included community custody/placement in its sentence. That statute does not delineate DOC's authority but rather generally sets forth the rights of inmates with respect to release prior to expiration of a sentence. DOC's authority to impose community custody/placement under that statute is dependent on the statutory prerequisite, discussed above, of a sentence imposing such community placement as part of an inmate's punishment.

10

ripe only if petitioner is suffering from a direct consequence of his plea which was unknown to him at the time he entered his plea. Under the analysis set forth above, community placement was never made a part of petitioner's sentence, and it cannot be imposed unless the judgment and sentence is amended by a court.

The petition is granted and the Department of Corrections is prohibited from imposing community placement on petitioner unless and until the judgment and sentence is amended.