81 P.3d 148 (2003)
119 Wash.App. 405
CITY OF BELLEVUE, a Washington municipal corporation, Appellant,
v.
EAST BELLEVUE COMMUNITY MUNICIPAL CORPORATION, a community municipal corporation, Respondent.
Nos. 49852-5-I, 50624-2-I.
Court of Appeals of Washington, Division 1.
December 15, 2003.
*149 Elaine Louise Spencer, Graham & Dunn, PC, Seattle, WA, for Appellant City of Bellevue.
Carol Ann Morris, Law Office of Carol A. Morris, P.C., Seabeck, WA, for Respondent East Bellevue Community.
Sharon Sullivan Eckholm, Washington Attorney General, Olympia, WA, for Respondent Central Puget Soundgrowth Mgmt.
John Richard Aramburu, Seattle, WA, for Respondents Renay Bennett, Jan Benson.
BAKER, J.
The City of Bellevue challenges a Central Puget Sound Growth Management Hearings Board decision invalidating an ordinance which exempts shopping center redevelopment from certain Growth Management Act[1] (GMA) requirements. The City also seeks a writ of prohibition preventing the East Bellevue Community Municipal Corporation from bringing challenges to the City's actions before the hearings board when such actions fall outside the community corporation's limited legal powers.
Because the community does not have authority to bring suits challenging ordinances outside its service area, we grant the requested writ of prohibition. But because individual citizens have raised identical challenges to the ordinance, we address the Board's decision. We conclude that the GMA does not allow a city to circumvent its own statutorily required concurrency ordinance, and affirm the board's decision invalidating Bellevue's ordinance.
*150 Writ of Prohibition
Bellevue first argues that the East Bellevue Community Municipal Corporation exceeded its power in mounting this appeal to the Board, and that the only appropriate remedy available is a writ of prohibition.
A writ of prohibition "arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person."[2] We have recognized that a writ of prohibition "may be invoked to prohibit judicial, legislative, executive, or administrative acts if the official or body to whom it is directed is acting in excess of its power."[3]
It is undisputed that the Growth Management Hearings Board had jurisdiction to hear the community's petition.[4] At issue is whether the community council had the authority to bring the appeal before the Board.
Chapter 35.14 RCW authorizes, but does not require, establishing community municipal corporations "when unincorporated areas are annexed to cities or towns in certain cases."[5] Citizens may establish such corporations in all or part of the annexed area, called a "service area," provided the service area meets certain minimum population standards.[6] Community municipal corporations are governed by a community council of five members, elected by voters within the service area.[7] The chief powers of a community municipal corporation are to approve or disapprove within its service area specific land-use actions of the city that annexed the area. The actions the community may challenge are enumerated in the statute and include only disapproving the city's comprehensive plans, zoning ordinances, conditional use permits or special exceptions, variances, subdivision ordinances, subdivision plats, and planned unit developments within the community's service area.[8]
East Bellevue argues that chapter 35.14 RCW should be interpreted to allow the community council to challenge ordinances applying outside the service area, but indirectly affecting the service area. Although RCW 35.14.040 gives community councils final decision-making authority, it limits that authority. And the statute limits what ordinances and land use decisions the community municipal corporation may challenge. These are comprehensive plans, zoning ordinances, conditional use permits, special exceptions or variances, subdivision ordinances, subdivision plats, and planned unit developments.[9]
The only other powers granted by the statute are advisory in nature. Community municipal corporations are authorized to:
(1) Make recommendations concerning any proposed comprehensive plan or other proposal which directly or indirectly affects the use of property or land within the service area;
(2) Provide a forum for consideration of the conservation, improvement or development of property or land within the service area; and
(3) Advise, consult, and cooperate with the legislative authority of the city on any local matters directly or indirectly affecting the service area.[[10]] *151 Community municipal corporations "`have no inherent powers and possess only such powers as are expressly conferred by statute or implied as necessary in aid of those powers which have been expressly conferred.'"[11]
The only case addressing the scope of a community council's authority under RCW 35.14.040 is City of Bellevue v. East Bellevue Community Council.[12] In that case, the Supreme Court recognized that RCW 35.14.040 gave community councils final decision-making authority over subjects listed in RCW 35.14.040 applying to land, buildings, or structures within their geographic jurisdictions.[13] But the Supreme Court did not consider whether a council's power extended beyond the explicit scope of the ordinance.
Express language in the statute grants a community council only the power to reject land-use decisions applying to land buildings or structures within the council's service area. The sole other grant of power is the power to advise and consult with municipal corporations on other related matters. We conclude that East Bellevue cannot bring actions before the Board or in superior court that do not fall within its explicit grant of authority, and accordingly, we grant Bellevue's writ of prohibition.
We proceed to address Bellevue's challenge to the merits of the Board's decision because individual petitioners raised identical issues before the Board. Bellevue does not challenge these petitioners' standing.
Bellevue's Ordinance
The Legislature enacted the GMA to minimize threats that uncoordinated and unplanned growth pose to the environment, economic development, and public welfare.[14] The GMA requires communities to coordinate comprehensive land use planning, and counties to adopt comprehensive land use plans and development regulations in accordance with the GMA.[15] The Legislature granted wide latitude to local governments to customize their comprehensive plans according to local growth patterns, resources, and needs.[16] The GMA's goals include encouraging development in areas with adequate existing facilities, reducing sprawl, preserving open spaces and the environment, and encouraging economic development that is consistent with adopted comprehensive plans.[17]
The GMA requires cities planning under the Act to include within their comprehensive plans a transportation element that, among other things, specifies "level of service" (LOS) standards for local streets and roads.[18] Under the GMA, each city determines its own acceptable level of traffic congestion. Bellevue has established its LOS standards, with different maximum levels throughout the city.[19]
A level of service standard measures the degree of intersection saturation, expressed as the ratio of the peak traffic volume at the intersection to the capacity of the intersection to handle traffic.[20] The volume-to-capacity ratio measures whether or not the physical geometry of the roadway provides sufficient capacity for the number of vehicles. A volume-to-capacity ratio of 1.0 or higher means that the intersection is handling traffic that exceeds capacity at peak hours.[21]
*152 The GMA requires that cities prohibit development that causes a decline in level of service below adopted standards. Such an action-forcing ordinance is known as a concurrency ordinance because its purpose is to assure that development permits are denied unless there is concurrent provision for transportation impacts:
[L]ocal jurisdictions must adopt and enforce ordinances which prohibit development approval if the development causes the level of service on a locally owned transportation facility to decline below the standards adopted in the transportation element of the comprehensive plan, unless transportation improvements or strategies to accommodate the impacts of development are made concurrent with the development.[[22]]
Under a typical concurrency ordinance, any development beyond a very low density threshold can only proceed if the developer can show that required public services, primary transportation, and utilities are or will soon be available.[23]
Chapter 14.10 of the Bellevue City Code contains Bellevue's "concurrency ordinance" required by RCW 36.70A.070(6)(b).[24] In the ordinance, the City exempts certain types of projects from its concurrency requirements.[25] In 2001, the City enacted Ordinance 5308 adding a ninth exemption for neighborhood shopping center redevelopment projects.[26] The City justified this exemption on the grounds that these projects would decrease traffic and provide a broad array of necessary goods and services.
Bellevue appeals the Board's decision invalidating the exemption. It argues that the general goals found in RCW 36.70A.020 allow a local municipality to exempt certain developments from the concurrency requirements found in RCW 36.70A.070(6)(b).
When reviewing an administrative decision, this court sits in the same position as the superior court. With respect to issues of law, we apply a de novo standard, giving substantial weight to the Board's interpretation of the statute it administers.[27] While we accord deference to an agency interpretation of the law where the agency has specialized expertise in dealing with such issues, we are not bound by the agency's conclusions of law.[28] But the burden of showing that the Board erroneously interpreted the law lies on the party who asserts that an error was made.
*153 The GMA mandates that comprehensive plans adopted pursuant to the GMA must include a transportation element that establishes LOS standards for all locally owned arterials and transit routes.[29] Local governments must then take the necessary steps to bring existing streets and transportation facilities into compliance with the LOS they have established.[30] The statute does not allow for exceptions. In fact, if the local jurisdiction cannot meet the financial requirements necessary to bring the street into compliance, language in the statute requires that the comprehensive plan outline how funds will be raised, or how the municipality will meet its level of service requirement.[31]
Bellevue argues that the concurrency requirement cannot trump all other goals of the GMA. The portion of the GMA that Bellevue infers might conflict with imposing a concurrency requirement for neighborhood shopping centers is found in RCW 36.70A.070(2).[32] But concurrency is not a goal, it is a requirement. Moreover, we do not agree that invalidating Bellevue's exemption would lead to a conflict between provisions of the GMA. Rather, concurrency is one of several factors that must be satisfied in order to allow development.[33] Under the clear and plain language of RCW 36.70A.070(6)(b), the City cannot create exemptions to its concurrency ordinance.
The City argues that the record before the Board showed that the redevelopment projects would reduce traffic, not increase it, and that the Board was required to give deference to the City's findings. The City cites to its ordinance and the accompanying testimony as support. The City explains that its findings clearly show that the exemption was justified because the projects will actually reduce overall traffic and that "only limitations in the city's models caused it to appear to increase congestion." A city cannot create exemptions to its LOS because it claims that its traffic model is inadequate. If a city is unable to properly measure traffic impacts from a development proposal for compliance with the GMA, the city can alter the methodology it uses to calculate traffic volume. And, if a proposed development project violates the city's adopted LOS, the city has a variety of options available to it. These may include changing the relevant LOS, modifying traffic patterns so as to reduce nonresident commuter traffic, thus reducing traffic congestion, or creatively addressing traffic mitigation expenses. But a city cannot simply exempt the proposal from compliance with traffic standards it has adopted pursuant to the GMA.
We affirm the Board's conclusion that the ordinance failed to conform to the GMA's concurrency requirements, and is therefore invalid.
AFFIRMED IN PART REVERSED IN PART.
COLEMAN and APPELWICK, JJ., concur.
NOTES
[1] Ch. 36.70A RCW.
[2] RCW 7.16.290.
[3] Brower v. Charles, 82 Wash.App. 53, 57, 914 P.2d 1202 (1996) (citing Winsor v. Bridges, 24 Wash. 540, 543, 64 P. 780 (1901).)
[4] RCW 36.70A.280. The statute requires that the Board hear and determine petitions filed by the state, county, city, or a person. The statute defines person as an "individual, partnership, corporation, association ... or public or private organization." RCW 36.70A.280.
[5] 17 William B. Stoebuck, Washington Practice: Real Estate: Property Law § 4.6 (1995).
[6] 17 William B. Stoebuck, supra, § 4.6. Before allowing a community municipal corporation, RCW 35.14.010 requires that (1) the service area would be eligible for incorporation as a city or town; or (2) the service area has at least three hundred inhabitants and ten percent of the population of the annexing city or town; or (3) the service area has a minimum population of one thousand inhabitants.
[7] RCW 35.14.020.
[8] RCW 35.14.040.
[9] RCW 35.14.040.
[10] RCW 35.14.050.
[11] Sammamish Cmty. Council, 108 Wash.App. at 49, 29 P.3d 728 (quoting 2A Eugene McQuillin, The Law of Municipal Corporations § 10.03, at 299 (Dennis Jensen & Gail A. O'Gradney eds., 3d ed. rev. vol.1996) (footnote omitted)).
[12] 138 Wash.2d 937, 983 P.2d 602 (1999).
[13] East Bellevue, 138 Wash.2d at 940, 983 P.2d 602.
[14] RCW 36.70A.010.
[15] RCW 36.70A.040.
[16] RCW 36.70A.010-901.
[17] See RCW 36.70A.020.
[18] RCW 36.70A.070(6)(a)(iii)(B).
[19] The maximum traffic allowed in downtown Bellevue is .950 of the road's capacity, while the East Bellevue area's LOS is .850 of capacity. Bellevue City Code 14.10.030.
[20] Sammamish Cmty. Council v. City of Bellevue, 108 Wash.App. 46, 50, 29 P.3d 728 (2001), rev. denied, 145 Wash.2d 1037, 43 P.3d 21 (2002).
[21] Montlake Cmty. Club v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 110 Wash.App. 731, 735, 43 P.3d 57 (2002).
[22] RCW 36.70A.070(6)(b).
[23] See, e.g., ch. 14.10 Bellevue City Code.
[24] Bellevue City Code 14.10.005. This section provides:

The purpose of this chapter is to set forth specific standards providing for city compliance with the concurrency requirements of the state Growth Management Act (GMA) and for consistency between city and countywide planning policies under the GMA. GMA requires that adequate street capacity be provided concurrently with development to handle the increased traffic projected to result from growth and development in the city and region. Responding to the changing framework of the future of transportation, these standards ensure compliance through the inclusion of:
A. Roadway standards that balance congestion management with land use objectives;
B. Mobility management areas with long-range objectives and shorter-term standards tailored to each area's characteristics and needs;
C. Level-of-service standards for each mobility management area, to include: reflection of availability of other mobility options; adjustment of levels of service where appropriate; interim standards for specific areas until completion of interlocal negotiations; consideration of trips crossing mobility management area boundaries; use of area-average method of evaluating roadway system adequacy, and use of an averaged two-hour p.m. peak period representing extended high trip volume periods.
Bellevue City Code 14.10.005.
[25] The statute previously included exemptions for public transportation facilities, public parks, private not-for-profit social services, public libraries, hospitals, publicly funded education facilities, affordable housing, and non-profit child care facilities. See Bellevue City Code 14.10.020.
[26] Bellevue City Code 14.20.020.
[27] King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 553, 14 P.3d 133 (2000).
[28] City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 46, 959 P.2d 1091 (1998).
[29] RCW 36.70A.070(6)(a)(iii).
[30] RCW 36.70A.070(6)(a)(iii)(D).
[31] RCW 36.70A.070(6)(a)(iv)(C).
[32] This portion of the mandatory comprehensive plan elements requires:

(2) A housing element ensuring the vitality and character of established residential neighborhoods that: (a) Includes an inventory and analysis of existing and projected housing needs that identifies the number of housing units necessary to manage projected growth; (b) includes a statement of goals, policies, objectives, and mandatory provisions for the preservation, improvement, and development of housing, including single-family residences; (c) identifies sufficient land for housing, including, but not limited to, government-assisted housing, housing for low-income families, manufactured housing, multifamily housing, and group homes and foster care facilities; and (d) makes adequate provisions for existing and projected needs of all economic segments of the community.
RCW 36.70A.070(2).
[33] See RCW 36.70A.070.