[No. 66262-7-I.   Division One.   May 14, 2012.]

CHRISTINA DRESS, *Respondent*, v. THE DEPARTMENT OF CORRECTIONS, *Appellant*.

320

322

Robert M. McKenna, Attorney General, and Ronda D. Larson, Assistant, for appellant.

David B. Koch (of Nielsen, Broman & Koch PLLC), for respondent.

¶1 Cox, J. — The Department of Corrections (DOC) is not authorized to either correct or ignore a final judgment and sentence that may be erroneous.[1] It may petition the court of appeals for review of an alleged error of law in a judgment and sentence within 90 days of having knowledge of the terms of such a sentence.[2]

¶2 Here, DOC never petitioned for review of what it characterizes as an error of law in the final judgment and sentence of Christina Dress. It then refused to release her from confinement when the final judgment and sentence, with credit for time served, required. The Snohomish County Superior Court properly granted Dress's petition for a writ of mandamus directing DOC to release her. We affirm.

---

[1] State v. Broadaway, 133 Wn.2d 118, 135, 942 P.2d 363 (1997); In re Pers. Restraint of West, 154 Wn.2d 204, 209-10, 110 P.3d 1122 (2005); In re Pers. Restraint of Davis, 67 Wn. App. 1, 9, 834 P.2d 92 (1992).

[2] RCW 9.94A.585(7).

¶3 On April 19, 2006, the Snohomish County Superior Court sentenced Dress on six counts, the longest term of which was for 84 months of confinement. Preprinted language in the judgment and sentence form states that "[a]ll counts shall be served concurrently," with two exceptions that are not at issue in this case.[3] The State did not appeal the judgment and sentence.

¶4 Dress was incarcerated at the Washington Corrections Center for Women. By letter dated May 10, 2006, DOC advised the sentencing judge, the deputy prosecuting attorney, and Dress's defense counsel that it believed the sentences imposed by the court should run consecutively to a prior sentence in King County Superior Court.[4] This was based on the assertion that Dress's recent crimes were committed while she was under a suspended King County drug offender sentencing alternative (DOSA) sentence.[5] DOC requested that the court amend its judgment and sentence to have the April 2006 sentences run consecutively to the King County DOSA sentence. It appears that there was no response to this letter.

¶5 Despite the provisions of RCW 9.94A.585(7), which provides for relief where DOC claims that there is an error of law in a judgment and sentence, the DOC never petitioned the court of appeals for review of the April 19, 2006, sentence. There is no explanation in this record why DOC failed to pursue this statutory remedy.

¶6 By letter dated August 11, 2006, which DOC sent to the court and all counsel, it stated again that Dress's sentences should be corrected to run consecutively to her DOSA sentence in the King County action. In this letter, DOC cited RCW 9.94A.589(2)(a) as legal authority for its position. We note that in this letter, DOC stated that the deadline for it to seek review of Dress's sentence under

---

[3] Clerk's Papers at 133.

[4] *Id.* at 140.

[5] *Id.*

RCW 9.94A.585(7) had passed. DOC also acknowledged that "the Department is bound by the plain language of a judgment and sentence, even if legally flawed."[6] Nothing happened as a result of this letter.

¶7 Over four years later, a week before her scheduled early release date in October 2010, DOC told Dress that her sentences were to run consecutively to her prior, suspended DOSA sentence. Thus, she would not be eligible for release for at least 11 more months. It appears that DOC based this decision on the arguments set forth in its May and August letters, written over four years earlier. No court has ever approved of DOC's view that the final judgment and sentence was erroneous.

¶8 Dress moved for an order compelling her release. She did so before the sentencing judge under her original criminal case cause number in Snohomish County Superior Court. DOC responded by letter to the court and counsel. It stated that it was not a party in that criminal case, arguing that the court did not have personal jurisdiction over DOC.[7] Additionally, DOC argued that the sentencing court lacked subject matter jurisdiction to decide how DOC applied RCW 9.94A.589(2)(a).[8] Further, it argued that Dress's motion was untimely and without merit.

¶9 Dress then petitioned for a writ of mandamus, naming DOC as the respondent. DOC responded, primarily arguing that the Snohomish County Superior Court did not have subject matter jurisdiction because Dress was imprisoned in Pierce County. The sentencing court rejected this and the other DOC arguments, granted the writ, and ordered DOC to release Dress. The court deferred her release for over six weeks, giving DOC the opportunity to seek appellate review and a stay of the writ.

---

[6] *Id.* at 143.

[7] *Id.* at 105-07.

[8] *Id.* at 105-06.

¶10 DOC appealed. It also sought a stay of the writ, which this court denied.

## DOC's AUTHORITY

¶11 A threshold issue in this appeal is whether DOC has the authority to either "correct" or disregard the provisions of an allegedly erroneous final judgment and sentence. We hold that it does not have that authority.

¶12 DOC argues that the trial court incorrectly concluded that it is barred from correcting an inmate's sentence structure. This is not the law.

¶13 Several cases have directly addressed the question whether DOC has the authority to alter a prisoner's final judgment and sentence. None has found that such power exists, even where the judgment and sentence was erroneous.

¶14 In *In re Personal Restraint of Davis*,[9] Davis pleaded guilty to a charge of cocaine possession.[10] Though former RCW 9.94A.120(8) (1992) provided that any person convicted of a felony must be sentenced to a one-year term of community placement, nowhere in Davis's plea agreement or judgment and sentence was community placement imposed.[11] Despite the judgment and sentence, upon release, Davis was transferred by DOC to community placement.[12] The *Davis* court concluded DOC's actions were unauthorized. It held that a trial court must amend the judgment and sentence before DOC can impose community placement not specified in the original sentencing documents.[13]

---

[9] 67 Wn. App. 1, 834 P.2d 92 (1992).

[10] *Id.* at 2-3.

[11] *Id.* at 4.

[12] *Id.*

[13] *Id.* at 9.

¶15 The supreme court in *State v. Broadaway*[14] echoed the impropriety of DOC's "correction" of sentences. Citing *Davis*, the court held that "the Department of Corrections is **not authorized to correct an erroneous judgment and sentence.**"[15]

¶16 Indeed, RCW 9.94A.585(7) provides a mechanism whereby DOC may appeal errors of law in a sentence, demonstrating an acknowledgment by the legislature that DOC cannot alter a judgment and sentence on its own. RCW 9.94A.585(7) states:

> The department may petition for a review of a sentence committing an offender to the custody or jurisdiction of the department. The review shall be limited to errors of law. Such petition shall be filed with the court of appeals no later than ninety days after the department has actual knowledge of terms of the sentence. The petition shall include a certification by the department that all reasonable efforts to resolve the dispute at the superior court level have been exhausted.

¶17 The *Davis* court highlighted this statute, noting that the legislature "recently created a new statutory procedure for DOC to challenge and correct erroneous sentences in court. . . . '[O]ne of the purposes clearly underlying enactment [of this legislation] was to provide an efficient and formal procedure for the Department to challenge an erroneous sentence . . . .' "[16]

¶18 Furthermore, as Division Two of this court has held, RCW 9.94A.585(7) "is designed to alleviate the dilemma previously facing DOC: enforcing what it considers to be an unlawful sentence, or ignoring the sentence imposed by the

---

[14] 133 Wn.2d 118, 942 P.2d 363 (1997).

[15] *Id.* at 135-36 (emphasis added) (citing *Davis*, 67 Wn. App. 1; *In re Pers. Restraint of Chapman*, 105 Wn.2d 211, 216, 713 P.2d 106 (1986)).

[16] *Davis*, 67 Wn. App. at 8 (quoting *In re Sentence of Chatman*, 59 Wn. App. 258, 264, 796 P.2d 755 (1990)); *see* RCW 9.94A.585(7) (All cases published before 2001 refer to RCW 9.94A.210(7), but this was recodified as 9.94A.585(7) in 2001.).

trial court."[17] The court went on to hold that the statute's requirements "should be strictly observed."[18]

¶19 Here, DOC knew of what it characterizes as an erroneous April 2006 sentence in May 2006. It wrote to the trial court and to all counsel in the criminal action, explaining its concerns and requesting that the sentencing court amend its judgment and sentence. No one responded.

¶20 For reasons that are unexplained in this record, DOC chose to ignore RCW 9.94A.585(7)'s express statutory mechanism for review of alleged errors of law in Dress's judgment and sentence by failing to petition for review within 90 days of its May 2006 letter.

¶21 After expiration of the 90 day deadline for seeking review of the judgment and sentence specified by RCW 9.94A.585(7), DOC sent to the court and counsel its August 2006 letter. This letter acknowledged the expiration of the time for DOC to seek review of the judgment and sentence. Significantly, it also stated that "the Department is bound by the plain language of a judgment and sentence, even if legally flawed." Given this statement by DOC, it is unclear why it chose to take the actions that we now describe.

¶22 In October 2010, just before Dress's early release date, DOC informed her that she would not be released for another 11 months. There is nothing in this record to explain why DOC changed its view of its authority from that stated in its August 2006 letter: that it was "bound by the plain language of a judgment and sentence, even if legally flawed."

¶23 In any event, DOC now argues that while "[t]he trial court reasoned that the DOC does not have the legal

---

[17] *In re Sentence of Hilborn,* 63 Wn. App. 102, 104, 816 P.2d 1247 (1991) (citing *Chatman,* 59 Wn. App. at 264).

[18] *Id.*

authority to correct a sentence structure on the eve of an inmate's release[,] [t]his is incorrect."[19] DOC is wrong.

¶24 As the cases make clear, and as DOC correctly acknowledged in its August 2006 letter, even if a sentence is clearly erroneous, it is not the role of DOC to "correct" this error.[20] That is the role of the courts.[21] DOC cites no persuasive authority to contradict these well-established principles, which it correctly acknowledged in August 2006. Instead, it argues that there is no due process liberty interest in "early release." It also argues that it need only "follow its own legitimately established procedures regarding early release into community custody."[22] We are not persuaded by these arguments.

¶25 The relevant case law is clear that DOC has no authority to correct or ignore a final judgment and sentence, even if it is erroneous. Whether there is a due process liberty interest in early release or whether DOC may follow its own procedures under these circumstances is simply irrelevant.

¶26 DOC misreads the judgment and sentence in an attempt to buttress its argument that Dress was not entitled to early release in October 2010. It relies on the following preprinted language in the judgment and sentence form used in this case:

> The sentence herein shall run consecutively with the sentence in cause number(s) _____ but concurrently to any other felony cause not referred to in this Judgment. RCW 9.94A.589.[23]

We note that the sentencing court did not fill in the blank space in this preprinted portion of the form with the King

---

[19] Appellant's Opening Brief at 20.

[20] *Davis*, 67 Wn. App. at 9.

[21] *Id.*; *West*, 154 Wn.2d at 209-10.

[22] Appellant's Opening Brief at 20.

[23] Clerk's Papers at 133.

County DOSA sentence. This DOSA sentence *is* listed in the criminal history section of the judgment and sentence.[24] Thus, the sentencing court was aware of that sentence. It could have inserted it into the blank space above had it intended to run the most recent sentences consecutively to the DOSA sentence. But the court did not do that. Accordingly, we reject DOC's reliance on the above provision to support its argument.

¶27 Our conclusion is reinforced by the fact that the sentencing court retained the following preprinted language that appears immediately before the above provision from the judgment and sentence:

> *All counts shall be served concurrently*, except for the portion of those counts for which there is a special finding of a firearm or other deadly weapon as set forth above at Section 2.3, and except for the following counts which shall be served consecutively _____.[25]

Examining these provisions in context, there can be no doubt that the trial court sentenced Dress to concurrent terms and did not run the terms consecutively to the King County DOSA sentence. In sum, we have no reason to disagree with the sentencing court's reading of its own sentencing decision.

¶28 In concluding that DOC had no authority to either correct or ignore the final judgment and sentence in this case, it is unnecessary for us to decide whether this judgment and sentence contains an error of law. Consequently, we do not decide that question.

¶29 In sum, DOC had no authority to hold Dress in confinement after her October 2010 early release date.

## SUPERIOR COURT'S AUTHORITY

¶30 DOC primarily argues that the Snohomish County Superior Court lacked authority to grant a writ of manda-

---

[24] *Id.* at 129.

[25] *Id.* at 133 (emphasis added).

mus because Dress was not in actual custody in that county. We disagree.

*Standard of Review*

■ ¶31 A superior court has inherent authority to grant a writ of review pursuant to article IV, section 6, of the state constitution. We review a superior court's grant of a constitutional writ for abuse of discretion.[26] A court abuses its discretion "when its decision is based upon untenable grounds or made for untenable reasons."[27]

¶32 DOC argues that we review de novo a superior court's grant of a constitutional writ, relying on *State v. Epler*.[28] We disagree.

¶33 In stating that a superior court reviews a lower court's decision to enter a writ de novo,[29] the *Epler* court cites this court's decision in *Saldin Securities, Inc. v. Snohomish County*.[30] A close reading of *Saldin* reveals what that case actually stated as the standard of review in these cases: "A court's decision to issue a constitutional writ is ***discretionary*** and ***will be reversed only for an abuse of that discretion***."[31] This statement is consistent with other cases that address the issue of the proper standard of review.[32] Thus, we decline to follow the *Epler* court's state-

---

[26] *Saldin Sec., Inc. v. Snohomish County*, 80 Wn. App. 522, 527-28, 910 P.2d 513 (1996).

[27] *Id.* at 528 (citing *Birch Bay Trailer Sales, Inc. v. Whatcom County*, 65 Wn. App. 739, 746, 829 P.2d 1109 (1992)).

[28] 93 Wn. App. 520, 969 P.2d 498 (1999).

[29] *Id.* at 523.

[30] 80 Wn. App. 522, 910 P.2d 513 (1996).

[31] *Id.* at 527-28 (emphasis added).

[32] *See Concerned Organized Women & People Opposed to Offensive Proposals, Inc. v. City of Arlington*, 69 Wn. App. 209, 221, 847 P.2d 963 (1993) (" '[a] refusal to grant a constitutional writ is reviewed under an abuse of discretion standard' " (quoting *Birch Bay Trailer Sales, Inc.*, 65 Wn. App. at 745 n.6)); *Bridle Trails Cmty. Club v. City of Bellevue*, 45 Wn. App. 248, 252, 724 P.2d 1110 (1986) ("The superior

ment of the standard of review and adhere to the abuse of discretion standard as the correct standard to apply here.

*"Actual Custody"*

¶34 As adopted in 1889, article IV, section 6 read in relevant part:

> Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus on petition by or on behalf of any person in actual custody in their respective counties.

¶35 Here, Dress was incarcerated in Pierce County when she sought a writ of mandamus in Snohomish County Superior Court. Therefore, the issue here is whether a person must be in "actual custody" in a county for its superior court to have jurisdiction to issue writs of mandamus.

■ ¶36 As with a court's construction of a statute, interpretation of the meaning of constitutional provisions begins with the text.[33] A court's objective is to "define the constitutional principle in accordance with the original understanding of the ratifying public so as to faithfully apply the principle to each situation which might thereafter arise."[34] If the text is unambiguous, courts will give effect to the plain meaning of the language.[35] To help discern the meaning of a constitutional provision, courts may utilize traditional rules of grammar.[36]

■ ¶37 A plain reading of the original version of article IV, section 6 that was adopted in 1889 leads us to the

court may in its discretion refuse to exercise its inherent powers of review so long as tenable reasons are given to support that discretionary ruling.").

[33] *Malyon v. Pierce County*, 131 Wn.2d 779, 799, 935 P.2d 1272 (1997).

[34] *Id.*

[35] *State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004) (citing *State v. Radan*, 143 Wn.2d 323, 330, 21 P.3d 255 (2001)).

[36] *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010) (citing *In re Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wn.2d 834, 838-39, 215 P.3d 166 (2009)).

conclusion that issuance of a writ of mandamus does not require the petitioner to be in "actual custody" in the county where this type of writ is sought. This plain reading is consistent with common sense. While habeas corpus petitions must be brought in the county in which a petitioner is in custody,[37] such a requirement for the other writs is unsupported by logic. In numerous cases, courts have issued writs to petitioners not held in custody.[38]

¶38 Thus the "actual custody" requirement is limited to *"writs of habeas corpus* on petition by or on behalf of any person in actual custody in their respective counties." There is no other rational interpretation of the plain language of this original provision of the constitution.

¶39 DOC makes a different argument. In doing so, it relies on an amendment to article IV, section 6 in 1952.[39] That amendment added a comma between "habeas corpus" and "on petition by or on behalf of any person in actual custody in their respective counties." The amendment reads:

> Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of *habeas corpus, on petition by* or on behalf of any person in actual custody in their respective counties.[40]

---

[37] *See Conway v. Cranor*, 37 Wn.2d 303, 304, 223 P.2d 452 (1950) (where a prisoner was held in custody in Walla Walla, the only courts open to his original habeas petition were those in Walla Walla County or the supreme court, as outlined by article IV, section 6).

[38] *See Thompson v. Wilson*, 142 Wn. App. 803, 815-16, 175 P.3d 1149 (2008) (the supreme court upheld mother's ability to seek writ of mandamus requiring coroner to meet and discuss the autopsy of her daughter); *see also City of Bellevue v. East Bellevue Cmty. Mun. Corp.*, 119 Wn. App. 405, 407-10, 81 P.3d 148 (2003) (Bellevue sought and was granted writ of prohibition to arrest East Bellevue's appeal before the growth management board); *Eugster v. City of Spokane*, 118 Wn. App. 383, 76 P.3d 741 (2003) (court upheld grant of writ of mandamus where writ was sought by city council member who was not in custody in any facility in the state).

[39] Appellant's Opening Brief at 8.

[40] (Emphasis added.)

¶40 DOC argues that we must apply the last antecedent rule to understand the meaning of the amendment to article IV, section 6. Under this rule, "unless a contrary intention appears in the statute, qualifying words and phrases refer to the last antecedent."[41] The corollary to this rule states that "the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one."[42]

¶41 DOC argues that the comma preceding the phrase "on petition by or on behalf of any person in actual custody in their respective counties" means that the "actual custody" provision that follows the comma applies to all of the writs mentioned in the preceding text, not just writs of habeas corpus. Applied here, DOC claims that Dress was not in the actual custody of the Snohomish County Superior Court and could not seek a writ of mandamus there.

¶42 We reject this unpersuasive argument. The chief reason for doing so is that the 1952 amendment was not meant to alter the jurisdictional requirements for granting the writs. Article IV, section 6 was amended by the voters in 1952, after the legislature approved an amendment to the state constitution. To understand the chief purpose of this amendment, we look to the official voter's pamphlet if the amendment's purpose is otherwise unclear.[43] The ballot title of this amendment asked:

> Shall Article IV, section 6 of the Constitution be amended to permit superior courts to have original jurisdiction in all cases where the controversy amounts to one thousand dollars or a

[41] *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781-82, 903 P.2d 443 (1995) (citing *Boeing Co. v. Dep't of Licensing*, 103 Wn.2d 581, 587, 693 P.2d 104 (1985)).

[42] *Id.* (citing *Judson v. Associated Meats & Seafoods*, 32 Wn. App. 794, 801, 651 P.2d 222 (1982)).

[43] *Brown v. State*, 155 Wn.2d 254, 268-69, 119 P.3d 341 (2005) ("[W]e will turn to other extrinsic sources such as the voter's pamphlet, only if an initiative is ambiguous." (citing *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 149 Wn.2d 660, 671, 72 P.3d 151 (2003))).

lesser sum in excess of the jurisdiction granted inferior courts . . . ?[44]

From the language of the legislature's proposed amendment and its ballot title, the change in article IV, section 6 was not an attempt to limit a superior court's jurisdiction to issue writs. Rather, it was to modify the amount in controversy necessary for the superior court to have original jurisdiction.[45]

¶43 Regardless of the change in punctuation to section 6, it is clear that the alteration had nothing to do with the amendment's intent, which was unrelated to the scope of the superior court's jurisdictional authority. Since 1889, superior courts have had jurisdiction to issue writs of mandamus without regard to whether the petitioner was in "actual custody" of the issuing court.

¶44 In arguing that Snohomish County Superior Court lacked jurisdiction to issue a writ of mandamus, DOC also relies on *Epler*. There, addressing a petition for a writ of certiorari, Division Three of this court stated that "[t]he Washington Constitution empowers the superior court to issue a writ of review on a petition by a person in actual custody, and other appellate power as prescribed by statute."[46] The only citation provided for this point of law was to article IV, section 6.[47] Given our discussion above regarding the plain meaning of the original version of section 6 and the limited purpose of the 1952 amendment to that section, we decline to adopt that reading of article IV, section 6.

¶45 Although the parties argued this case on the basis that a constitutional writ of mandamus was at issue, the record indicates that Dress actually sought a statutory

---

[44] *State of Washington Voter's Pamphlet General Election* 21-22 (Nov. 4, 1952).

[45] *See* SUBSTITUTE H. J. RES. 13, 32d Leg., Reg. Sess. (Wash. 1951).

[46] *Epler*, 93 Wn. App. at 523.

[47] *Id.*

writ for relief under chapter 7.16 RCW.[48] Nevertheless, we reach the same conclusion under that alternative form of relief.

¶46 Statutory writs are reviewed de novo "to determine whether the decision below was contrary to law. . . . Issues of fact are reviewed to determine whether they are supported by competent and substantial evidence."[49] Under RCW 7.16.060 and 7.16.070, a party seeking a writ of mandamus must show "(1) the party subject to the writ has a clear [ministerial] duty to act; (2) the petitioner has no plain, speedy, and adequate remedy in the ordinary course of law; and (3) the petitioner is beneficially interested."[50]

¶47 DOC does not argue that Dress failed to meet any of these requirements. In our independent review of this record and controlling authorities, we conclude that she was entitled to a statutory writ of mandamus under this alternative approach.

*Illegal or Discretionary Act*

¶48 DOC also argues that the writ of mandamus was improper because such a writ cannot be used to compel an illegal or discretionary act. Because the writ did not compel an illegal act, we disagree.

¶49 A writ of mandamus is appropriate "only where a state official is under a mandatory ministerial duty to perform an act required by law as part of that official's duties."[51] "[T]he mandate must define the duty with such particularity 'as to leave nothing to the exercise of discre-

---

[48] Clerk's Papers at 123.

[49] *Sunderland Family Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 788, 903 P.2d 986 (1995) (citing RCW 7.16.120(3)-(5); *Freeburg v. City of Seattle*, 71 Wn. App. 367, 371, 859 P.2d 610 (1993)).

[50] *Seattle Times Co. v. Serko*, 170 Wn.2d 581, 588-89, 243 P.3d 919 (2010).

[51] *Freeman v. Gregoire*, 171 Wn.2d 316, 323, 256 P.3d 264 (2011) (citing *Cmty. Care Coal. of Wash. v. Reed*, 165 Wn.2d 606, 614, 200 P.3d 701 (2009)).

tion or judgment.' "[52] Thus, it must not only be a mandatory duty, but also ministerial: defined by law and leaving no discretion to the government actor.[53]

¶50 Here, DOC's mandatory duty was to release Dress, as the writ directed. There was no discretion left to DOC. The duty arose from the directives of Dress's final judgment and sentence of April 2006.[54] It provided that "all counts shall be served concurrently." DOC did not seek review of that sentence. Thus, it was bound to comply with its terms and conditions. In this case, that required DOC to release Dress on her early release date in October 2010.

¶51 Dress's judgment and sentence included a reference to RCW 9.94A.589. Based on this reference, DOC argues that its legal duty was not clear enough to satisfy the requirements of mandamus. To the contrary, Dress's judgment and sentence and the duty of DOC to comply with the terms of that sentence were clear. As we explained earlier in this opinion, the judgment and sentence expressly directed that all sentences were to be served concurrently. The mere reference to RCW 9.94A.589 did not modify that requirement to require that the April 2006 sentences be served consecutively to the earlier DOSA sentence.

¶52 DOC also argues that RCW 9.94A.589(2)(a) requires it to impose Dress's sentences consecutively. This argument is based, in part, on the unstated premise that DOC may ignore the provisions of Dress's judgment and sentence that plainly require concurrent service of the sentences.

---

[52] *Id.* (quoting *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 599, 229 P.3d 774 (2010)); *Walker v. Munro*, 124 Wn.2d 402, 408, 879 P.2d 920 (1994) (citing *Clark County Sheriff v. Dep't of Soc. & Health Servs.*, 95 Wn.2d 445, 450, 626 P.2d 6 (1981)).

[53] *State ex rel. Clark v. City of Seattle*, 137 Wash. 455, 461, 242 P. 966 (1926) (quoting 18 Ruling Case Law *Mandamus* § 28, at 116 (1917)).

[54] *See Davis*, 67 Wn. App. at 9.

¶53 In support of this argument, DOC relies on *Caffall Bros. Forest Products v. State.*[55] There, the supreme court held that a writ of mandamus sought by the appellant would not lie because "confirmation of sale to a person other than the highest bidder would be an illegal action under the clear intent of, and purpose behind, the statute."[56] That case does not control.

¶54 Here, releasing Dress *was* a legal duty imposed by the judgment and sentence. As noted above, Washington courts have consistently prohibited DOC from "correcting" a trial court's judgment and sentence, even if DOC believes the sentence is legally incorrect. As the supreme court stated, "[T]he Department of Corrections is *not authorized to correct an erroneous judgment and sentence.*"[57]

*Adequacy of Alternative Remedy*

¶55 DOC argues that granting the writ of mandamus was improper because Dress had an adequate remedy available in the form of a personal restraint petition (PRP). We disagree.

¶56 Neither constitutional nor statutory writs of mandamus will be issued unless there is no other " 'plain, speedy and adequate remedy in the ordinary course of law.' "[58] "What constitutes a plain, speedy, and adequate remedy depends on the facts of the case and rests within the sound discretion of the court in which the writ is sought."[59] "Whether there is a plain, speedy, and adequate remedy in

---

[55] 79 Wn.2d 223, 484 P.2d 912 (1971).

[56] *Id.* at 229.

[57] *Broadaway,* 133 Wn.2d at 135-36 (emphasis added) (citing *Davis,* 67 Wn. App. 1; *In re Chapman,* 105 Wn.2d at 216).

[58] *Wash. State Council of County & City Emps., Council 2 v. Hahn,* 151 Wn.2d 163, 167, 86 P.3d 774 (2004) (quoting RCW 7.16.170).

[59] *City of Olympia v. Thurston County Bd. of Comm'rs,* 131 Wn. App. 85, 96, 125 P.3d 997 (2005) (citing *Butts v. Heller,* 69 Wn. App. 263, 266, 848 P.2d 213 (1993)).

the ordinary course of the law is a question left to the discretion of the court in which the proceeding is instituted."[60] Thus, appellate courts "will not disturb a decision regarding a plain, speedy, and adequate remedy on review unless the superior court's discretion was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."[61]

■■■ ¶57 Here, the lower court did not abuse its discretion when it found that a PRP was not a speedy legal remedy. Dress sought a writ before the original sentencing judge who knew the facts and background of her case. As the sentencing judge noted, filing a PRP in an appellate court made little sense, given that court's lack of knowledge of Dress's case. Further, the court found, based on evidence submitted on the issue, that "typically PRPs take six months or probably longer to address."[62] As the sentencing judge stated, "[E]very second longer that [Dress] is in custody is improper and longer than she was essentially told by the Department itself."[63] Given all of the potential delays highlighted by the lower court, we have no reason to overturn its determination that a PRP was not an adequate alternative remedy. The court properly exercised its discretion.

■■■ ¶58 DOC argues that a plain, speedy, and adequate remedy "merely requires that there be a process by which the plaintiff may seek redress for the allegedly unlawful action." It relies on *Washington State Council of County & City Employees, Council 2 v. Hahn*.[64] Such a relaxed stan-

---

[60] *River Park Square, LLC v. Miggins*, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001) (citing *State ex rel. Hodde v. Superior Court*, 40 Wn.2d 502, 517, 244 P.2d 668 (1952)).

[61] *Id.* (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

[62] Report of Proceedings (Nov. 5, 2010) at 26-27.

[63] *Id.* at 26.

[64] 151 Wn.2d 163, 86 P.3d 774 (2004).

dard for what constitutes an adequate alternative remedy is not supported by *Hahn*.

¶59 There, the employees sought a writ to order Yakima County judges to engage in collective bargaining.[65] The court found that another statute, the Public Employees Collective Bargaining Act (PECBA), chapter 41.56 RCW, provided the *same* remedy that had been sought by the employees through a writ of mandamus.[66] Unlike in Dress's case, the speediness of the remedy under the writ appeared to be equivalent to the solution provided by PECBA.[67] Nowhere in *Hahn* did the court state that the existence of *some* process for redressing the petitioners' injuries was sufficient, and thus the court's holding does not support DOC's contention. For a remedy to supplant a writ, it must be plain, *speedy*, and adequate. Dress did not have such an alternative remedy.

### Equitable Relief

¶60 DOC also argues that Dress is not entitled to equitable relief. Because the writ of mandamus issued in this case was issued to direct DOC to comply with the legal requirement of her final judgment and sentence, no equitable relief was involved. We need not address this argument further.

### No Credit for Time Released

¶61 DOC's final argument anticipates reversal of the grant of the writ. Specifically, DOC requests that upon a reversal of the superior court's writ, Dress should not be entitled to credit toward her prison term for the time that she has been released. This request is moot and we do not address it further.

---

[65] *Id.* at 165.

[66] *Id.* at 167-69.

[67] *Id.* at 166-67.

¶62  We affirm the grant of the writ of mandamus.

SPEARMAN, A.C.J., and GROSSE, J., concur.