IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39733-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KELLY JAY BALLES, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

COONEY, J. — Kelly Balles was convicted of unlawful possession of a controlled substance and sentenced to community custody under the supervision of the Department of Corrections (DOC). While on community custody, Mr. Balles failed to report to his community corrections officer (CCO), resulting in the issuance of a DOC secretary's warrant for his arrest. Thereafter, in *State v. Blake*, the Supreme Court declared unconstitutional the statute under which he was convicted. 197 Wn.2d 170, 481 P.3d 521 (2021). After the court issued its opinion, but before the mandate issued in *Blake*, the DOC served the secretary's warrant on Mr. Balles. While serving the secretary's warrant, Mr. Balles was found to be in possession of a large quantity of controlled substances and a stolen firearm. The State charged Mr. Balles with two counts of possession of a controlled substance with intent to deliver, first degree unlawful possession of a firearm, and possession of a stolen firearm.

Mr. Balles moved to suppress the evidence seized during his arrest, arguing that *Blake* voided his unlawful possession of a controlled substance conviction, thereby invalidating the secretary's warrant. The trial court agreed, suppressed the evidence, and dismissed the charges.

The State appeals the trial court's orders that suppressed evidence and dismissed the charges, as well as its finding of fact 10.

We hold that Mr. Balles' conviction for unlawful possession of a controlled substance was not "void on February 25, 2021[,] per the Blake decision," Clerk's Papers (CP) at 86; that the secretary's warrant was valid when it was served; that the search pursuant to the secretary's warrant was lawful; and that substantial evidence did not support the trial court's finding of fact 10. We reverse the trial court's orders and remand for further proceedings.

BACKGROUND

In 2014, Mr. Balles was found guilty of one count of unlawful possession of a controlled substance under former RCW 69.50.4013(1) (2013) and was sentenced to, among other conditions, a term of community custody. Mr. Balles' community custody conditions included that he report to his assigned CCO, not possess ammunition or firearms, and not possess or use any controlled substances.

While serving the community custody portion of his sentence, Mr. Balles failed to report to his CCO as directed, resulting in a secretary's warrant being issued for his arrest on January 28, 2020. The secretary's warrant lacked any reference to Mr. Balles' crime of conviction or to RCW 69.50.4013.

On February 25, 2021, the Washington State Supreme Court issued its decision in *Blake*, declaring RCW 69.50.4013(1) unconstitutional. Just over a month later, on March 31, DOC officers, members of the Pacific Northwest Violent Offender's Task Force, and the Yakima County Sheriff's Office visited Mr. Balles' last known address in Yakima County in an attempt to serve the secretary's warrant. Officers found Mr. Balles laying on a bed in a locked bedroom within the residence. After Mr. Balles was taken into custody, Officer Joel Panattoni saw "a rock of powdery crystalline substance" on a glass plate at the foot of the bed, which he suspected to be methamphetamine. CP at 53. DOC officers also found a full box of ammunition under the mattress and a bag containing four to six bags of suspected methamphetamine under the bed. Based on what the officers had discovered, they discontinued the search pending application for a judicial search warrant.

Once Detective Hull[1] was granted a search warrant by a Yakima County Superior Court judge, the search resumed. The resulting search yielded a stolen firearm, dominion

---

[1] Detective Hull's full name is not contained in the record.

and control items associated with Mr. Balles, a "copious amount[ ] of unused packaging materials," CP at 3; more ammunition; 10.7 pounds of marijuana; a functional digital scale; and over $20,000 in currency.

On April 9, 2021, the State charged Mr. Balles with two counts of possession of a controled substance with intent to deliver, first degree unlawful possession of a firearm, and possession of a stolen firearm.

Two months after it issued its original decision, on April 20, 2021, the Supreme Court entered an order amending its opinion in *Blake*. The mandate was filed the following day.

On August 4, 2021, Mr. Balles' 2014 unlawful possession of a controlled substance conviction, the conviction for which he was serving community custody, was vacated and the charge dismissed pursuant to *Blake*. Thereafter, Mr. Balles filed a motion to suppress the evidence seized during the service of the secretary's warrant, arguing that effective February 25, 2021, *Blake* rendered his unlawful possession of a controlled substance conviction void and the secretary's warrant invalid. The trial court agreed, explaining in part:

> [T]his Court is finding today in understanding what Blake stands for and what our Washington State Supreme Court intended by it, I am making the finding that the Washington State Supreme Court intended that as soon as the Blake decision came out that no one was—no convictions were valid or constitutional.

There wasn't a hearing that needed to be done. There wasn't an analysis that needed to be done. They just said all possession of controlled substance cases from before and here on after are just constitutionally invalid. And so, therefore, nobody could be held under any type of authority from any conviction on those because they were never properly convicted, they were never constitutionally convicted. And that's what Blake stands for.

I don't know if our state supreme court ever—I think that's exactly what they intended. Whether we personally agree or not, I think that's exactly what they intended from the Blake case itself.

. . . .

And I think that's what the state supreme court intended with Blake. Blake came out. The administrative warrant then was no longer valid because Mr. Balles should no longer have been on community custody. And, therefore, the CCO had no authority to search Mr. Balles in his residence at—or at that residence at the time.

And for those reasons I'm finding that any substances or property or evidence that was seized as part of that arrest will be suppressed from the facts in this case.

Rep. of Proc. (RP) at 46-48. The trial court then entered an order dismissing the charges against Mr. Balles. The trial court's oral ruling was incorporated into its September 6, 2023, findings of fact and conclusions of law.

The State timely appeals, arguing the trial court's finding of fact 10 is not supported by substantial evidence and that the trial court erred in suppressing evidence and dismissing the charges.

ANALYSIS

This appeal calls on us to decide the validity of a secretary's warrant, which was issued pre-*Blake* yet served post-*Blake*, on an offender subject to supervision by the

5

DOC, based on a conviction for unlawful possession of a controlled substance. The State further assigns error to the trial court's finding of fact 10.

We hold that the trial court's finding of fact 10 is not supported by substantial evidence in the record and that the court erred when it concluded that: Mr. Balles' conviction was void on February 25, 2021, the secretary's warrant was not valid, and all evidence located during the March 31 search was obtained illegally. We reverse the trial court's orders and remand for the court to consider Mr. Balles' alternative argument that the DOC's search exceeded the scope of the warrant.

FINDING OF FACT 10

The State argues the trial court's chronology of events, related to finding of fact 10, is unsupported by substantial evidence in the record. We agree.

We review a trial court's findings of fact pertaining to suppression of evidence under the substantial evidence standard. *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). Substantial evidence is "a sufficient quantity of evidence . . . to persuade a fair-minded, rational person of the truth of the finding." *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Disputed evidence will be upheld "when any reasonable view substantiates [the court's] findings, even though there may be other reasonable interpretations." *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 501, 663 P.2d 132

6

No. 39733-5-III
*State v. Balles*

(1983). Unchallenged findings of fact become verities on appeal. *State v. O'Neill*, 148

Wn.2d 564, 571, 62 P.3d 489 (2003).

Among other findings, the trial court found:

9. Officers arrested Mr. Balles and brought him upstairs and placed him in a patrol vehicle, then requested permission to search the room where Mr. Balles was located.

10. *Officers then thoroughly searched the room, including opening drawers of a small dresser and unzipping a duffle bag found under the bed. They located a firearm and other contraband items, including likely controlled substances.*

11. Based on the information found in the search, the *officers then contacted the Yakima County Superior Court to obtain a search warrant*, which was approved by the Honorable David Elofson.

CP at 86 (emphasis added). The State contends that the records lacks support for the trial

court's finding that the "drawers of the small dresser" were opened prior to a judicial

search warrant being authorized.

The only evidence related to the search of a dresser is in a report authored by

Detective Sergeant R. Tucker.[2] After reporting that Detective Hull had been granted a

judicial search warrant for the residence, Detective Sergeant Tucker wrote that he

photographed evidence located during the search. "[He] then went back downstairs and

photographed further items" and "took up an entire drawer from a dresser that contained

---

[2] Detective Sergeant R. Tucker's full name is not provided in the record.

7

US currency, a large amount of marijuana and dominion for Balles. The dresser was the same one that had contained the firearms." CP at 61-62.

On this record, the trial court's findings that officers searched a small dresser prior to obtaining a judicial warrant was not based on disputed evidence and is not supported by the record. The only evidence in the record concerning the dresser reveals it was searched after the judicial search warrant was granted, not during the initial search. Conseqeuntly, finding of fact 10 is unsupported by the record.

SUPPRESSION OF EVIDENCE AND DISMISSAL OF CHARGES

The State argues the trial court erred when it concluded that Mr. Balles' unlawful possession of a controlled substance conviction was void upon the Supreme Court's issuance of its decision in *Blake* and when it granted Mr. Balles' motion to suppress and dismiss. We agree.

We review de novo conclusions of law pertaining to a trial court's suppression of evidence. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). Under the Fourth Amendment to the United States Constitution, individuals have the right to be secure in their houses against unreasonable searches and seizures. Article I, section 7 of the Washington Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." "[W]arrantless searches are unreasonable per se." *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996). However, a

search warrant generally constitutes the requisite "'authority of law.'" *State v. Morse*, 156 Wn.2d 1, 7, 123 P.3d 832 (2005) (quoting *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999)).

This authority of law has been extended to the DOC. *See* RCW 9.94A.631(1). DOC supervision "primarily furthers the punitive purposes of deterrence and protection." *State v. Ross*, 129 Wn.2d 279, 286, 916 P.2d 405 (1996). Offenders subject to supervision through the DOC do not enjoy the same constitutional privacy protections as other citizens. *State v. Olsen*, 189 Wn.2d 118, 124, 399 P.3d 1141 (2017). The DOC not only manages offenders in total coenefinement (prison), its supervision of offenders extends to those serving time on community custody. RCW 9.94A.704(1). The legislature "has explicitly and broadly given the [DOC] the power and responsibility to supervise offenders while on various types of community custody." *In re Pers. Restraint of Dalluge*, 162 Wn.2d 814, 818, 177 P.3d 675 (2008). While the nature of the restraint may be different, "'[a] defendant is no less restricted when he is under community placement, particularly community custody, as when incarcerated.'" *Ross*, 129 Wn.2d at 287 (quoting *In re Pers. Restraint of Caudle*, 71 Wn. App. 679, 683, 863 P.2d 570 (1993)).

As part of its duty to supervise offenders on community custody, the DOC's secretary may issue an arrest warrant based on "reasonable cause" to believe that an

9

offender has violated the terms of his community custody. RCW 9.95.220(2). Further, "[i]f there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence . . . or other personal property." RCW 9.94A.631(1).

An offender under the DOC's supervision "must submit to confinement until discharged by due process of law." *See State v. Paniagua*, 22 Wn. App. 2d 350, 358, 511 P.3d 113, *rev. denied*, 200 Wn.2d 1018, 520 P.3d 970 (2022). Said another way, the DOC is obligated to carry out a final judgment and sentence until a defendant obtains judicial relief. *Dress v. Dep't of Corr.*, 168 Wn. App. 319, 328, 279 P.3d 875 (2012). The DOC has no authority to "contravene or decrease court-imposed conditions." RCW 9.94A.704(6). It is also not authorized to correct or ignore a final judgment and sentence, even one that may be erroneous. *State v. Broadaway*, 133 Wn.2d 118, 135, 942 P.2d 363 (1997); *In re Pers. Restraint of West*, 154 Wn.2d 204, 209-10, 110 P.3d 1122 (2005); *In re Pers. Restraint of Davis*, 67 Wn. App. 1, 9, 834 P.2d 92 (1992). Rather, an offender subject to community custody may appeal an erroneous sentence. *Broadaway*, 133 Wn.2d at 135. Alternatively, the DOC may challenge an erroneous sentence under RCW 9.94A.585(7). *See Davis*, 67 Wn. App. at 8-9.

Here, after Mr. Balles failed to report to his CCO, and before *Blake* was decided, a secretary's warrant was issued for his arrest under RCW 9.94A.716. The warrant was based on reasonable cause to believe Mr. Balles had violated the terms of his community custody. It is undisputed the DOC had the authority to issue the secretary's warrant and that the warrant was valid at the time of *issuance*. Consequently, we must next address whether the warrant remained valid and whether the DOC possessed the authority to *execute* the warrant following the Supreme Court's decision in *Blake*. To answer this, we must examine *Blake* and its effect on Mr. Balles' unlawful possession of a controlled substance conviction.

As previously stated, the Supreme Court rendered its decision in *Blake* on February 25, 2021. *Blake* held that a portion of Washington's unlawful possession of a controlled substance statute, RCW 69.50.4013(1), "violates the due process clauses of the state and federal constitutions and is void." 197 Wn.2d at 195. Following *Blake*, thousands of convictions had to be vacated and resentencing was required in many cases.

We have previously rejected the notion that unlawful possession of a controlled substance was a nonexistent crime pre-*Blake*. *State v. Olsen*, 26 Wn. App. 2d 722, 727, 530 P.3d 249, *rev. granted*, 26 Wn.3d 1006, 539 P.3d 1 (2023). "[A] nonexistent crime is conduct which, as charged, does not violate any criminal statute that existed at the time of the conviction." *Id.* at 727-28. We explained in *Olsen* that "[u]nlawful possession of a

11

controlled substance . . . was *a valid crime that was later invalidated.*"  *Id.* at 728

(emphasis added).

A defendant convicted of a crime later deemed unconstitutional and invalidated on

due process grounds is entitled to have their conviction vacated.  *State v. Carnahan*, 130

Wn. App. 159, 164, 122 P.3d 187 (2005).  But a conviction under RCW 69.50.4013(1) is

not automatically vacated or invalidated.  *See State v. LaBounty*, 17 Wn. App. 2d 576,

581, 487 P.3d 221 (2021).  Rather, it has long been understood that the subject of a court

order must comply with the order until relieved of the obligation to do so.  *Cronin v.*

*Cent. Valley Sch. Dist.*, 12 Wn. App. 2d 123, 131, 456 P.3d 857 (2020) (citing *Levinson*

*v. Vanderveer,* 169 Wash. 254, 256, 13 P.2d 448 (1932)).  In the civil context, "[a] final

judgment, . . . based upon an erroneous view as to the constitutionality of a statute, is

valid and binding until regularly reversed or set aside."  *State v. Sheets*, 48 Wn.2d 65, 67,

290 P.2d 974 (1955).  The same is true in the criminal context.  An offender held in

custody "under process issued on the final judgment . . . is not entitled to his discharge . .

. unless such process or judgment be void."  *In re Habeas Corpus of Newcomb*, 56 Wash.

395, 403, 105 P. 1042 (1909). When faced with a potentially invalid court order, the

solution is not to willfully violate it.  Instead, the defendant must challenge his original

judgment and sentence in a timely manner and comply with the terms of the order until it

is otherwise overturned.

12

In response to the challenges brought by *Blake*, the legislature, in enacting

RCW 9.94A.728(2), shared our notion that a *Blake*-affected judgment and sentence

could be altered only by a court order. RCW 9.94A.728(2) provides:

> Notwithstanding any other provision of this section, an incarcerated
> individual entitled to vacation of a conviction or the recalculation of his or
> her offender score pursuant to *State v. Blake*, No. 96873-0 (Feb. 25, 2021),
> may be released from confinement *pursuant to a court order* if the
> incarcerated individual has already served a period of confinement that
> exceeds his or her new standard range. *This provision does not create an
> independent right to release from confinement prior to resentencing.*

(Emphasis added.)

In this case, Mr. Balles remained on community custody and subject to the terms

of his judgment and sentence until a court issued an order vacating his 2014 conviction

for unlawful possession of a controlled substance. Mr. Balles' conviction was not

vacated until August 4, 2021. Thus, when the DOC executed the secretary's warrant four

months earlier, on March 31, Mr. Balles was still subject to the terms of his 2014

judgment and sentence. The DOC's duty to supervise Mr. Balles under the terms of his

judgment and sentence was not effected until Mr. Balles' conviction was vacated. In

other words, while *Blake* voided Mr. Balles' conviction, he was still subject to the terms

of his judgment and sentence until his conviction was vacated. The trial court erred when

it concluded the effect of the *Blake* decision was instant on Mr. Balles' judgment and

sentence.

13

No. 39733-5-III
*State v. Balles*

If we were to adopt the trial court's conclusion that Mr. Balles' conviction was void when the *Blake* decision was released, it would place the DOC and its field officers in the untenable position of reviewing every appellate decision, interpreting the decision, and then imposing its interpretation on those it supervises, all prior to a mandate being filed. Meanwhile, the appellate courts would retain the ability to amend the opinion until the filing of a mandate. Indeed, the *Blake* decision was amended one day before the mandate was filed.

## CONCLUSION

We reverse the trial court's finding of fact 10 and the orders that suppressed evidence and dismissed the charges. We remand for further proceedings, including the trial court's consideration of Mr. Balles' alternative claim for relief.

Cooney, J.

I CONCUR:

Staab, A.C.J.

14

No. 39733-5-III

FEARING, J. (dissent) — This court again measures the extent of the reach of the Washington Supreme Court's 2021 decision, *State v. Blake*, 197 Wn.2d 170, 481 P.3d 581 (2021). On January 28, 2020, one year before the release of *State v. Blake*, the Washington Department of Corrections (DOC) issued a warrant for the arrest of Kelly Jay Balles, then under community custody supervision for a drug possession conviction. Balles had missed a meeting with his community corrections officer. On February 25, 2021, the Supreme Court issued *State v. Blake*, which held unconstitutional RCW 69.50.4013, the statute creating the crime of possession. DOC had not yet served the warrant on Balles. On March 31, 2021, DOC served the warrant on Balles at his residence, where the officers found not only Balles but a cornucopia of pharmacopeia and drug dealing gizmos.

This appeal asks whether the *Blake* decision, released on February 25, invalidated, as of March 31, the secretary's warrant to arrest Kelly Jay Balles. Because stare decisis demanded that government officials immediately obey the *Blake* decision and because, based on the rule announced in *State v. Blake*, the State had imposed Kelly Jay Balles' community custody conditions on an unlawful judgment and sentence, I answer in the affirmative. I would affirm the superior court's grant of Balles' motion to suppress the evidence discovered during the March 31 execution of the DOC administrative warrant.

FACTS

The facts intertwine Kelly Jay Balles' excursion inside the Washington State criminal justice system with the course of *State v. Blake* inside the Washington Supreme Court. In 2014, Kelly Jay Balles was found guilty of one count of possession of a controlled substance, in violation of RCW 69.50.4013, under Yakima County cause number 14-1-00135-1. His sentence incorporated a term of community custody. The conditions of community custody included periodically reporting to his assigned community corrections officer, notifying the DOC of any change of address, possessing no ammunition or firearms, and possessing no controlled substances.

On an unidentified day years later, Kelly Jay Balles missed a meeting with his DOC community corrections officer. On January 28, 2020, DOC issued a secretary's warrant for the arrest and detention of Balles as a result of his averting the meeting. The warrant did not direct law enforcement officers or community custody officers to search the residence or surroundings of Balles.

On February 25, 2021, the Washington Supreme Court issued its decision in *State v. Blake*, 197 Wn.2d 170 (2021). The decision held unconstitutional, under the state and federal due process clauses, RCW 69.50.4013(1). Kelly Jay Balles had been under community custody for violating this unconstitutional statute. As of February 25, DOC had not executed the secretary's warrant to arrest Balles.

On March 17, 2021, the State of Washington, in *State v. Blake*, filed a motion for reconsideration with the Supreme Court. The State asserted that some of the justices on the court failed to fathom the ramifications of the decision proclaiming the drug possession statute unconstitutional. The State complained that the high court grounded its ruling on an argument forwarded by an amici, not by Shannon Blake. Thus, according to the State, the Supreme Court violated its own principle to only address contentions raised by the parties. In turn, the State murmured that it lacked a full opportunity to brief the contention adopted by the court. Finally, as part of its motion for reconsideration, the State asked the court to declare its ruling to apply only prospectively.

Meanwhile, back in Wapato, on March 31, 2021, DOC officers and members of the Pacific Northwest Violent Offender Task Force went to Kelly Balles' last known address to execute the administrative arrest warrant. Three women at the Wapato residence confirmed Balles lived there, but the women denied the officers permission to enter. DOC officers obtained approval from a DOC supervisor to enter the residence without consent.

Upon entering the Wapato dwelling, law enforcement officers encountered a room locked with a padlock. Officers severed the lock, entered the room, and discovered Kelly Jay Balles inside. The officers arrested Balles. DOC Officer Jose Gonzalez saw in plain view a plate holding a rock of a powdery crystalline substance that Gonzalez identified as

methamphetamine. Officers then scoured the room and located a box of ammunition under the mattress. Sergeant Tucker found a large blue and black bag, which he opened. Inside Tucker found a substance he suspected to be methamphetamine.

Law enforcement officers paused the search in order to procure a judicial search warrant. A Yakima County Superior Court judge approved the warrant. When resuming their search, officers found a firearm, ammunition, papers showing Balles to reside in the room, 10.7 pounds of marijuana, a functional digital scale, packaging materials, and over twenty thousand dollars in cash.

We revisit Olympia. On April 20, 2021, the Washington Supreme Court entered an order amending its opinion. The two amendments did not change the court's ruling invalidating RCW 69.50.4013(1). The amendments did not address any of the arguments posed in the motion for reconsideration. The court ignored the State's request to apply the court's decision only prospectively. On the same day, the court also entered an order denying reconsideration. On April 21, 2021, the Supreme Court issued its mandate to the superior court to conduct further proceedings consistent with its February 25 opinion.

PROCEDURE

On April 9, 2021, the State of Washington charged Kelly Jay Balles with possession of methamphetamine with an intent to deliver, possession of marijuana with an intent to deliver, unlawful possession of a firearm, and possession of a stolen firearm.

4

On August 4, 2021, in Yakima County cause number 14-1-00135-1, the superior court vacated Balles' 2014 drug possession conviction. DOC had issued its arrest warrant under the community custody provisions of the 2014 judgment and sentence.

On April 14, 2023, Kelly Jay Balles filed a motion to suppress the evidence obtained during the March 31, 2021 search of his houseroom. Balles argued that the *Blake* decision voided his 2014 conviction for possession of a controlled substance and, in turn, abrogated the DOC secretary's warrant. According to Balles, he was not lawfully under community custody on March 31. He further argued that the search lacked a nexus to his community custody conditions.

On May 4, 2023, the superior court entertained Kelly Jay Balles' motion to suppress, agreed with Balles' first argument, and granted the motion. The superior court suppressed all evidence found in Balles' room on March 31. The court did not address whether the officers' search lacked a nexus to Balles' community custody. The State then dismissed the three charges against Balles without prejudice because the State could not prove the charges without presentation of the suppressed evidence.

LAW AND ANALYSIS

Since issuance of *State v. Blake*, Washington courts have gradually, but steadily, untangled the complications attended to a drug possession conviction inflicted on the basis of RCW 69.50.4013, the statute declared unconstitutional. We are the first

5

appellate court to answer whether the *Blake* decision invalidated community custody

conditions imposed in a judgment and sentence and whether the decision abrogated an

administrative arrest warrant for violating such conditions even before a court vacates the

possession conviction.  I deem the key to this appeal being the *Blake* decision's issuance

before the arrest and search of Kelly Jay Balles' premises.

The State appeals the superior court's grant of Kelly Jay Balles' suppression

motion.  The State contends Balles remained under an obligation to obey the 2014

judgment and sentence for possession of a controlled substance, which sentence imposed

community custody, until a judicial determination declared the conviction annulled.

According to the State, the layers of heavy prison doors did not automatically open, with

the release of *State v. Blake*, for those imprisoned for drug possession.  The State

maintains that, similarly, Balles' custody term outside jail walls did not immediately end.

According to the State, Balles should have applied to the superior court to eliminate the

2014 sentence and continue to submit to community supervision until the vacation.  As

the argument continues, an April 2021 vacation of the judgment and sentence did not

impact the legality of a search in March.  The State relatedly argues that DOC officers

must continue to supervise those whom a court ordered them to superintend until

vacation of the court order.

In response, Kelly Jay Balles maintains that the *Blake* decision immediately expunged every conviction in Washington State for possession of a controlled substance without the intent to deliver. In turn, the decision invalidated a warrant for violation of community custody conditions when the offender served under supervision as a result of a drug possession conviction. Thus, beginning on February 25, 2021, Balles no longer lived under DOC supervision, and DOC lacked any authority to arrest him or search his premises and property. According to Balles, although the court may formally vacate the conviction later, the vacation only corrects the record. Balles analogizes to the hypothetical situation of an offender being convicted of theft on February 26, 2021, the day after *State v. Blake*, without the vacation of an earlier drug possession conviction. Under this scenario, the sentencing court still may not count the prior drug conviction in the offender score.

To answer the question on appeal, I outline the law on warrants. I dissect the Supreme Court's decision in *State v. Blake*. I review the nature of and ramifications extending from the Washington Supreme Court's declaration of a criminal statute as unconstitutional. I analyze the two handfuls of Washington appellate decisions addressing, in other settings, complications resulting from *State v. Blake*. I investigate the nature of the doctrine of stare decisis and the function of appellate court mandates.

7

I explore the timing of when a Supreme Court decision binds lower courts and government actions. Finally, I scrutinize the majority opinion.

The parties' respective positions sometimes assume that the date of issuance, or alternatively the date of binding effect, of *State v. Blake* bears relevance to, if not controls, the legality of the March 31, 2021 seizure. I question this assumption. I conclude that, even if the Washington Supreme Court decided *State v. Blake* yesterday, the decision would demand the suppression of the evidence garnered in March 2021 as a result of the community custody sentence and the secretary's warrant. This conclusion follows from the retroactive nature of a declaration of a criminal statute as unconstitutional. Nevertheless, I bolster my dissent by primarily analyzing the validity of the search and seizure of Kelly Jay Balles' personal property as if the date of the *Blake* decision's precedential value controls the motion to suppress.

Since this appeal concerns an arrest warrant, I begin with the law of warrants. Article I, section 7 of the Washington Constitution creates a vigorous privacy right. *State v. Cornwell*, 190 Wn.2d 296, 301-02, 412 P.3d 1265 (2018). The section declares:

> No person shall be disturbed in his private affairs, or his home invaded, *without authority of law*.

CONST. art. I, § 7 (emphasis added). The "authority of law" generally stems from a warrant. *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999).

Under RCW 9.94A.631, a community custody officer may search a supervised individual based on reasonable suspicion of a probation violation, rather than a warrant supported by probable cause. RCW 9.94A.631(1) declares:

> If an offender violates any condition or requirement of a sentence, a community corrections officer may arrest or cause the arrest of the offender without a warrant, pending a determination by the court or by the department. If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property.

Nevertheless, the community custody officer may not search without "an authorizing probation condition in a *valid, court-ordered judgment and sentence*." *State v. Cornwell*, 190 Wn.2d 296, 302 n.2 (2018) (emphasis added).

The State claims authority of law from the DOC secretary's warrant of arrest and from RCW 9.94A.631. Kelly Balles argues that *State v. Blake* abrogated the warrant such that law enforcement conducted the March 31, 2021 search without authority of law. According to Balles, *State v. Blake* also annulled his 2014 judgment and sentence containing the community custody conditions.

I first seek clues as to how to answer the pending question from the Supreme Court decision itself. In *State v. Blake*, 197 Wn.2d 170 (2021), the court voided RCW 69.50.4013 based on the due process clause protections that bar state legislatures

from punishing as a serious crime innocent and passive conduct with no criminal intent.

RCW 69.50.4013, at least as applied in previous Supreme Court decisions, required no

mens rea for a conviction for simple controlled substance possession. The majority

concluded its opinion:

> Accordingly, RCW 69.50.4013(1)—the portion of the simple drug
> possession statute creating this crime—violates the due process clauses of
> the state and federal constitutions and is void. We vacate Blake's
> conviction.

*State v. Blake*, 197 Wn.2d at 195.

Most breakthrough decisions do not analyze the practicalities of their rulings.

High courts traditionally announce a new rule of law in one case and then keep the bench

and bar on edge, waiting for another decision that reveals the retroactivity or

prospectivity of the rule announced. *People v. Trice*, 75 Cal. Dist. Ct. App. 3d 984, 986,

143 Cal. Rptr. 730 (1977). *State v. Blake* was no exception to this common law tradition

of law on installment.

In *State v. Blake*, the Supreme Court did not order its decision to apply

retroactively or prospectively. The court did not state whether all earlier convictions for

possession of a controlled substance became void, and, if so, the date on which the

convictions became void. The *Blake* decision did not mention whether the penal

ramifications of a controlled substance conviction end only when a court formally vacates

10

the earlier conviction. The opinion did not address whether community custody ordered because of a controlled substance possession conviction ended, and, if so, when. The Supreme Court did not expressly comment that its ruling immediately bound lower courts or whether stare decisis would achieve command status only at a later date such as the issuance of the mandate.

Assuming *State v. Blake* became authoritative straightaway, the lawfulness or unlawfulness of the seizure of Kelly Jay Balles and his personal property does not depend on the retroactive application of *Blake*. Even if the ruling only applied prospectively, the search of Kelly Jay Balles' houseroom succeeded the ruling. Regardless, the State of Washington, the Washington Court of Appeals, and Washington trial courts, based on more general principles of law, have operated on the assumption that *Blake* should be applied retroactively. An unconstitutional statute is and has always been a legal nullity. *State ex rel. Evans v. Bhd. of Friends*, 41 Wn.2d 133, 143, 247 P.2d 787 (1952). A new substantive rule decided on constitutional grounds operates retroactively. *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989); *In re Personal Restraint of Ali*, 196 Wn.2d 220, 236, 474 P.3d 507 (2020); *State v. Paniagua*, 22 Wn. App. 2d 350, 354, 511 P.3d 113 (2022). *State v. Blake* created such a new substantive rule.

Language from Washington Court of Appeals opinions subsequent to *State v. Blake* support Kelly Jay Balles' position that *Blake* immediately revoked his community

custody supervision and annulled the secretary's warrant.

> [RCW 69.50.4013,] pursuant to *Blake*, has always been void under both
> the state and federal constitutions.

*State v. French*, 21 Wn. App. 2d 891, 894, 508 P.3d 1036 (2022). An unconstitutional law is void, and is as no law. *State v. Markovich*, 19 Wn. App. 2d 157, 172, 492 P.3d 206 (2021). A penalty imposed pursuant to an unconstitutional law is void even if the prisoner's sentence became final before the law was held unconstitutional. *State v. Markovich*, 19 Wn. App. 2d 157, 172 (2021). A Washington court never held lawful authority to enter judgment on a conviction for unlawful possession of a controlled substance. *State v. French*, 21 Wn. App. 2d 891, 897 (2022).

Next, I review the many appellate decisions, beginning with decisions detrimental to Balles, analyzing collateral consequences of *State v. Blake* in an effort to discern how to resolve Kelly Jay Balles' appeal. The *Blake* decision's declaration of unconstitutionality does not benefit an accused in other settings. In *State v. Olsen*, 26 Wn. App. 2d 722, 726, 530 P.3d 249 (2023),*aff'd*, No. 100204-1 (Wash. Sept. 12, 2024), this court ruled that a defendant may not withdraw a guilty plea for the crime of possession of a controlled substance if the plea was part of a plea bargain that allowed the accused to avoid a greater offense. The Washington Supreme Court has accepted review of *State v. Olsen*.

An earlier conviction for bail jumping during the time when one faced charges for possession of a controlled substance remains valid even though *State v. Blake* later invalidated the possession statute. *State v. Paniagua*, 22 Wn. App. 2d 350, 355-56, 511 P.3d 113 (2022). The same rule holds true for escape from prison while one serves a sentence for violating RCW 69.50.4013. *State v. Paniagua*, 22 Wn. App. 2d 350, 355 (2022). The rule in escape and bail jumping cases follows from the State lacking any burden of showing that the accused was facing charges under a constitutional statute or had been sentenced to prison under a valid statute. Instead, the accused must submit to confinement until discharged by due process of law. *State v. Paniagua*, 22 Wn. App. 2d 350, 358 (2022). His or her remedy is to seek a declaration of the unconstitutionality of the statute, not flee from justice. *State v. Paniagua*, 22 Wn. App. 2d 350, 359 (2022). A purpose behind outlawing bail jumping is to effectuate orderly administration of justice. *State v. Paniagua*, 22 Wn. App. 2d 350, 359 (2022).

*State v. Paniagua* is distinguishable because RCW 69.50.4013 had not been declared unconstitutional at the time Victor Paniagua jumped bail. In contrast, RCW 69.50.4013 had been declared unconstitutional before the service of the warrant on Kelly Jay Balles. Orderly administration of law, instead of justifying the arrest of Kelly Jay Balles, demanded that DOC obey the Supreme Court's ruling in *State v. Blake* and

13

immediately terminate community custody when based on the statute declared void. The State, just as offenders, must obey Supreme Court rulings.

In another setting, the government may rely on an accused's conduct violating a statute later declared unconstitutional, including RCW 69.50.4013, when forming probable cause. *State v. White*, 97 Wn.2d 92, 103, 640 P.2d 1061 (1982); *State v. Moses*, 22 Wn. App. 2d 550, 561, 512 P.3d 600, *review denied*, 518 P.3d 205 (2022); *In re Pers. Restraint of Pleasant*, 21 Wn. App. 2d 320, 339-40, 509 P.3d 295 (2022). In *State v. Moses* and *Personal Restraint of Pleasant*, this court ruled that law enforcement lawfully stopped and searched the respective individuals based on probable cause that each possessed controlled substances. The searches occurred before the release of *State v. Blake*. Both accused sought to suppress the ingathering from the respective searches after the announcement of the *Blake* decision.

*State v. White*, *State v. Moses*, and *Personal Restraint of Pleasant* followed the teachings of the United States Supreme Court decision in *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). According to *Michigan v. DeFillippo*, a later determination that a statute is unconstitutional does not necessarily invalidate an earlier finding of probable cause to believe that a person violated the statute. *Michigan v. DeFillippo*, 443 U.S. 31, 37-38 (1979). *DeFillippo*, however, recognized an exception to the rule in the instance of a law "so grossly and flagrantly unconstitutional

14

that any person of reasonable prudence would be bound to see its flaws." *Michigan v.
DeFillippo*, 443 U.S. 31, 38 (1979). I cannot characterize RCW 69.50.4013 as grossly
unconstitutional since the Washington Supreme Court repeatedly declared the statute
constitutional until 2021. *State v. Bradshaw*, 152 Wn.2d 528, 539-40, 98 P.3d 1190
(2004); *State v. Cleppe*, 96 Wn.2d 373, 380-81, 635 P.2d 435 (1981).

I do not consider the *DeFillippo* rule helpful in answering the question on appeal.
DOC did not rely for probable cause on any current possession of controlled substances
by Kelly Jay Balles when issuing the administrative warrant. Instead, when executing the
warrant, DOC relied on a judgment and sentence entered under an unconstitutional
statute. The entirety of Kelly Jay Balles' community custody was void not just the
probable cause to search.

I find *State v. White*, 97 Wn.2d 92 (1982), helpful in resolving Kelly Jay Balles'
appeal for a different reason than addressing probable cause. The Supreme Court, in
*State v. White*, determined that the *DeFillippo* rule exception compelled suppression of a
confession following an arrest under Washington's "stop-and-identify" statute. The court
emphasized that the Court of Appeals, in *City of Mountlake Terrace v. Stone*, 6 Wn. App.
161, 492 P.2d 226 (1971), had declared an "almost identical" city ordinance as
unconstitutional years before Allen White's arrest. As a result, the statute was "flagrantly
unconstitutional," and police should have known it could not serve as the basis for a valid

15

arrest. According to the Supreme Court in *State v. White*, for a least four decades,
Washington law enforcement had been expected to know when a statute has been deemed
unconstitutional.

The Washington Supreme Court did not clandestinely release its ruling in *State v.
Blake*. The bombshell decision garnered immediate headline news in Washington State,
if not the nation. Kip Hill, *Washington Supreme Court Rules State Drug Possession Law
Unconstitutional after Challenge by Spokane Woman*, SPOKESMAN REVIEW (Spokane,
Wash.) (February 25, 2021, 9:49 PM) https://www.spokesman.com/stories/2021/feb/25/
washington-supreme-court-rules-state-drug-possessi/ [https://perma.cc/TFU9-JFNK];
Mike Carter, *Washington Supreme Court Strikes Down Law That Makes Unintentional
Possession of Drugs a Crime*, SEATTLE TIMES (February 25, 2021, 8:05 PM)
[https://perma.cc/UZ8Q-YGNR]; Daniel Villarreal, *Washington State Supreme Court
Rules Drug Possession Law Unconstitutional in 5-4 Decision*, NEWSWEEK (March 13,
2021), https://www.newsweek.com/washington-state-supreme-court-rules-drug-
possession-law-unconstitutional-5-4-decision-1575872 [https://perma.cc/6QLY-Y9PQ].

By February 26, 2021, DOC should have known of the unconstitutionality of
RCW 69.50.4013 and that any community custody conditions arising from a drug
possession conviction were now void. DOC should have alerted all of its officers to this
change in the law. The majority belittles the capabilities of DOC, with its dedicated,

qualified, and able executives and staff, to quickly pivot to new circumstances in order to comply with Washington Supreme Court directives. The officers, on March 31, 2021, arrested Kelly Jay Balles and searched his surroundings despite knowing Balles should have never been convicted of the crime for which he was sentenced to community custody.

The majority writes that my dissent would place DOC and its field officers in the untenable position of reviewing every appellate decision and interpreting that decision. I have already answered this criticism in part. The *Blake* decision was not just any appellate decision. The decision ruptured all fault lines under the Evergreen State. All law enforcement officers knew or should have known of the decision by February 26, 2021.

The Washington State Attorney General's office maintains a lineup of attorneys assigned to DOC. These attorneys review Washington Supreme Court and published Washington Court of Appeals decisions as issued. The Attorney General's office can immediately advise the DOC executive of appellate decisions. DOC leadership could, in turn, immediately direct all of its officers not to execute a warrant based on a conviction under a void statute. In this instance, DOC leadership should have sent an emergency alert to its community custody officers to take no further steps to enforce administrative warrants attended to a conviction for possession of a controlled substance. If DOC

17

officers needed days to identify those under community custody because of possession convictions, DOC could have suspended enforcement of warrants until completing the task. By the time of the *Blake* decision, DOC had already loitered for three months in serving Kelly Jay Balles' warrant, such that serving the warrant held no urgency.

The majority in essence asserts that law enforcement officers need not know the law. Yet, the majority would not excuse an offender or an accused for failing to know the law. One of the long-standing and basic principles upon which our legal system depends is that all sane persons are presumed to know the law and are in law held responsible for their free and voluntary acts and deeds. *State v. Spence*, 81 Wn.2d 788, 792, 506 P.2d 293 (1973), *rev'd on other grounds*, 418 U.S. 405, 94 S. Ct. 2727, 41 L. Ed. 2d 842 (1974). Law enforcement officers and government officials should abide by this principle.

The State contends that *State v. White* does not control. According to the State, DOC and other officers, in Kelly Jay Balles' circumstances, complied with a court order based on a statute found unconstitutional as distinguished from a law enforcement officer arresting an individual, without a court order based on probable cause. Stated differently, the DOC officers were not enforcing an unconstitutional statute, but rather, complying with a court order. According to the State, law enforcement's actions were one step removed from a law enforcement officer enforcing a statute in the first instance.

18

I agree with the State that Kelly Jay Balles' judgment and sentence demanded that he submit to community custody supervision, but I disagree that any court order directed DOC officers to arrest Balles for any violation of community custody. DOC acted pursuant to an administrative warrant, not a court order, when it entered Balles' abode. Regardless, I deem DOC's distinction without a difference. Washington principles of law invalidated the 2014 judgment and sentence entered against Balles for possession of a controlled substance and thus abrogation also removed community custody supervision. The earlier administrative warrant lacked lawful authority.

In addition to *State v. White*, Washington decisions resolving convolutions attended to *State v. Blake* benefit Kelly Jay Balles. For instance, according to one decision, the primary corollary from *State v. Blake* demands that the superior court reverse or vacate an earlier conviction for possession of a controlled substance under RCW 69.50.4013. *State v. LaBounty*, 17 Wn. App. 2d 576, 581, 487 P.3d 221 (2021).

The majority suggests this court, in *LaBounty*, declared that a conviction under RCW 69.50.4013 is not automatically vacated or invalidated. Majority at 12, citing *State v. LaBounty*, 17 Wn. App. 2d 576, 581 (2021). The opinion has no such language.

The Supreme Court has held that a sentencing court may not consider a prior conviction based on RCW 69.50.4013 in an offender score regardless of whether the court already vacated the conviction. *State v. Jennings*, 199 Wn.2d 53, 67, 502 P.3d 1255

19

(2022); *State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986). An offender earlier sentenced based on an offender score that included a drug possession conviction is entitled to resentencing with a lower score. *State v. Markovich*, 19 Wn. App. 2d 157, 173, 492 P.3d 206 (2021). These decisions illustrate the need to retrospectively apply *State v. Blake* to government action even if the action occurred before issuance of the *Blake* decision or before formal vacation of the earlier judgment and sentence. The sentencing court may not include an earlier foreign state conviction for simple drug possession in the calculation of an offender score, because some convictions no longer compare with any valid Washington crime. *State v. Markovich*, 19 Wn. App. 2d 157, 172, 492 P.3d 206 (2021).

*State v. French*, 21 Wn. App. 2d 891, 508 P.3d 1036 (2022), best answers our pending question. In *French*, this court ruled that the sentencing court should not add one point to an offender score as a result of Jarvis French committing his current offense while on community custody. The condition of community custody was imposed on French pursuant to his sentence for possession of a controlled substance under RCW 69.50.4013(1). The violation of community custody occurred before issuance of *State v. Blake*. This court emphasized that the statutory definition of community custody clarifies that a term of community custody amounts to a portion or part of the sentence imposed on an offender. RCW 9.94A.030(5). A period of community custody directly

results from a conviction. Because courts always lacked lawful authority to enter judgment on a conviction for unlawful possession of a controlled substance, the courts wanted for lawful authority to impose a sentence pursuant to such a conviction. If the offender suffered punishment for committing an offense while on community custody, the court would renew the original constitutional violation. Kelly Jay Balles suffers continuing punishment under an unconstitutional statute as a result of the execution of the administrative warrant.

In *State v. French*, the State asserted that, even if a statute is void, a judgment entered pursuant to the statute is not void, but only erroneous. According to the State, until the accused overturned the judgment, the State may impose sanctions for violations of the judgment, including violations of community custody terms. The State analogized to treatment of erroneously entered contempt orders, which one must obey until successfully challenging the order's validity. This court found no parallel between an erroneously entered contempt order and penalties imposed because of the violation of an unconstitutional statute.

Because of this court's decisions in *State v. Moses* and *Personal Restraint of Pleasant*, I recognize the possibility that DOC officers may have held probable cause to arrest Kelly Jay Balles on March 31 if *State v. Blake* did not become final or did not gain

21

authoritative status until after March 31. Thus, I must adjudge the date on which *State v. Blake* became binding precedent.

Proceedings continued before the Washington Supreme Court in *State v. Blake* after the February 25, 2021 decision and even after the March 31 capture of Kelly Jay Balles. Proceedings continued until the Supreme Court issued its mandate on April 21, 2021. I explore whether the *Blake* ruling bound the DOC officers only with the issuance of the mandate. I juxtapose the nature of the principle of stare decisis with the process of an appellate court issuing a mandate.

RAP 12.5 controls issuance of a mandate by the Supreme Court:

> (c) **When Mandate Issued by Supreme Court**.
> (1) The clerk of the Supreme Court issues the mandate for a Supreme Court decision terminating review upon stipulation of the parties that no motion for reconsideration will be filed.
> (2) In the absence of such a stipulation, except in a case in which the penalty of death is to be imposed, the clerk issues the mandate twenty days after the decision is filed, unless (i) a motion for reconsideration has been earlier filed, or (ii) the decision is a ruling of the commissioner or clerk and a motion to modify the ruling has been earlier filed. If a motion for reconsideration is timely filed and denied, the clerk will issue the mandate upon filing the order denying the motion for reconsideration.

In *Obert v. Environmental Research & Development Corp.*, 112 Wn.2d 323, 340-41, 771 P.2d 340 (1989), the trial court ruled that a limited partnership properly succeeded a corporation. Following a Court of Appeals decision dissolving the limited partnership, litigants moved for an order of stay and authority for the limited partnership

22

to continue on behalf of the corporation pursuant to the trial court decision reversed by the Court of Appeals. The Court of Appeals granted the motion. The Supreme Court ruled that the limited partnership could have acted even without the Court of Appeals ruling on the motion. The Supreme Court held that, until the Court of Appeals issues its mandate pursuant to RAP 12.5, a decision of the Court of Appeals does not take effect. RAP 12.2.

A "mandate" is the official notice of action of the appellate court, directed to the court below, advising that court of the action taken by the appellate court, and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed. *Dye v. Diamante*, 2017 Ark. 37, 509 S.W.3d 643, 645-46 (2017); *Ketcher v. Ketcher*, 198 So. 3d 1061 (Fla. Dist. Ct. App. 2016); *Min v. H&S Crane Sales, Inc.*, 472 S.W.3d 773 (Tex. Ct. App. 2015). An appellate court retains control over an appeal until it issues a mandate and the decision is not final until a mandate is issued. *Charpentier v. Ortco Contractors*, 480 F.3d 710 (5th Cir. 2007).

But the mandate only applies to the parties. A mandate is a different creature from the stare decisis effect of the published opinion. *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992).

In *People v. Trice*, 75 Cal. App. 3d 984, 143 Cal. Rptr. 730 (1977), the People denied that a California Supreme Court ruling declaring a jury instruction

unconstitutional to lack immediate effect in part because its application would require

automatic reversal of dozens of cases on appeal, wherein the trial court delivered the

instruction. The People argued this point even in the face of a portion of the Supreme

Court decision reading: "the rule we here announce shall apply to the instant matter and

to all cases not yet final as of the date of this decision." *People v. Gainer*, 19 Cal. 3d

835, 853, 566 P.2d 997, 139 Cal. Rptr. 861 (1977). The People deemed the court's

announcement dicta. The California intermediate court reasoned that deciding whether

the Supreme Court decision excerpt constituted dicta was irrelevant. The Court of

Appeals needed to abide by all Supreme Court decisions regardless when announced.

Directly on point is *In re Zermeno-Gomez*, 868 F.3d 1048 (9th Cir. 2017). On

May 31, 2017, the Ninth Circuit held, in *United States v. Sanchez-Gomez*, 859 F.3d 649,

661 (9th Cir. 2017), that before placing a defendant in shackles, the district court must

render an individualized decision that a compelling government purpose would be served

and that shackles are the least restrictive means for maintaining security and order. Two

weeks later, the court granted the government's motion to stay the mandate, so the

government could seek full en banc review or file a petition for a writ of certiorari.

Citing the stay of the mandate, several judges within the District of Arizona found that

*Sanchez-Gomez* was not binding on them and accordingly denied defendants' requests to

be unshackled. The petitioners in *Zermeno-Gomez* were three defendants whose requests

24

to be unshackled were denied based on the stayed mandate. On June 26, 2017, petitioners filed a petition for a writ of mandamus asking that the Ninth Circuit order the District Court for the District of Arizona to comply with the decision in *Sanchez-Gomez*. The Ninth Circuit granted the relief. The court held that a published decision of an appellate court is binding on lower courts within the circuit, notwithstanding a stay of the mandate. A published decision constitutes binding authority that must be followed unless and until overruled by a body competent to do so. A stay of the mandate does not destroy the finality of an appellate court's judgment.

The stay of a mandate in a case on appeal merely delays return of jurisdiction to the district court to carry out the reviewing court's judgment in that case. *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992). The stay in no way affects the duty of all courts to immediately apply the precedent established by the decision. *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992).

I conclude that the *Blake* decision gained stare decisis eminence throughout the Evergreen State realm on February 25, 2021. Adherence to its ruling declaring RCW 69.50.4013 unconstitutional was then mandatory on all Washington appellate courts, trial courts, and government officials. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). On February 25, DOC officers could no longer arrest Kelly Jay Balles or search his belongings stashed in a private residence.

The State seeks to be a benefactor of the accused by arguing that delayed enforcement of *State v. Blake* and this court's endorsement of the March 31 search advantages other accused. The State contends that a defendant benefits by a rule that demands a court order to invalidate a conviction and sentence for possession of a controlled substance post-*Blake*. According to the State, an accused may have pleaded guilty to possession of a controlled substance, in exchange for the prosecution not proceeding with charges for possession with intent to manufacture or deliver. If *State v. Blake* automatically negated the conviction, the State might then proceed to pursue a possession with intent to manufacture or deliver charge. Thus, the offender may seek to keep the possession conviction of record. We question whether the law would allow the State to pursue other charges with the vacation of a possession conviction. Nevertheless, in the great majority of circumstances, the accused benefits from immediate negation of the conviction. Raising the possibility of detriment to a limited number of offenders fails to defeat the law's demand that *State v. Blake* be immediately obeyed.

If DOC had executed the administrative warrant for the arrest of Kelly Balles before February 25, 2021, I might not, based on *State v. Moses* and *Personal Restraint of Pleasant*, seek to affirm the suppression of Kelly Jay Balles' seized methamphetamine, marijuana, and drug paraphernalia. That question can remain for another day. Nevertheless, DOC executed the warrant after the *Blake* decision negated the warrant's

26

No. 39733-5-III
*State v. Balles* (Dissent)

authority. DOC needed no administrative time to recognize the invalidity of anyone's community custody supervision stemming from a conviction for possession of a controlled substance conviction. DOC could have and should have immediately obeyed the *Blake* ruling as to those under supervision.

I dissent.

Fearing, J.

Fearing, J.

27